[No. A011172. First Dist., Div. Two. Apr. 11, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD MIKE DAVIS, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to rules 976 and 976.1, California Rules of Court, this opinion is certified for publication, with the exception of issues III and IV.

COUNSEL

Frances Ternus, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eugene W. Kaster and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ROUSE, J.—Defendant Richard Davis appeals from a judgment of conviction after a jury found him guilty of escape by force or violence, in violation of section 4532, subdivision (b), of the Penal Code (hereafter section 4532(b).)[1]

Prior to April 1, 1980, John Stafford, a Deputy United States Marshal for the Northern District of California, was assigned to locate defendant, who had escaped from Terminal Island, a federal prison, sometime in February 1980, following his conviction for various offenses. Deputy Stafford distributed wanted posters of defendant to, among others, the San Francisco Sheriff's Department. On April 1, 1980, acting on a call from a San Francisco deputy sheriff, Deputy Stafford located defendant on a bench on the sixth floor of the San Francisco County Jail. At that time, Deputy Stafford placed defendant in federal custody, took him to the seventh floor of the county jail, and had him booked as a federal prisoner on charges of escape from a federal prison. The sheriff's department received a "remand slip"

---

[1] All statutory references hereafter are to the Penal Code.

The jury also found that defendant had previously suffered three felony convictions within the meaning of section 667.5. Defendant was sentenced to the upper term of six years for the escape and to two additional years for two of the prior felony convictions.

from the United States Marshal, authorizing it to hold defendant. Defendant was kept in the county jail pursuant to a contract with federal authorities because the nearest federal facility is 16 miles away from the federal courthouse for the Northern District of California.

On April 27, 1980, 13 people escaped from the county jail. Defendant was one of them. However, he was immediately caught just outside the building as he was walking through the parking lot. Not all of the escapees were federal prisoners.

## I.

Defendant contends that he did not violate section 4532(b). He points out that the statute makes it a crime for a prisoner "arrested and booked for, charged with, or convicted of a *felony*" to escape from jail or prison. (§ 4532(b); italics added.) Defendant asserts that the word "felony" in the statute is defined by section 17, subdivision (a), which provides: "A felony is a crime which is punishable with death or by imprisonment in the state prison. Every other crime or public offense is a misdemeanor except those offenses that are classified as infractions." He argues that since he was a prisoner because of *federal* felony charges (i.e., escape from Terminal Island prison, in violation of 18 U.S.C. § 751) and since this federal felony is not a crime "punishable . . . by imprisonment in the *state* prison" (§ 17, subd. (a); italics added), the statute did not apply to him. He claims that only those prisoners who are confined due to alleged or actual California offenses can commit the crime of escape.

In determining the meaning of "felony," as used in section 4532(b), our primary concern is to ascertain the Legislature's intent so as to effectuate the law's purpose. (*People* v. *Shirokow* (1980) 26 Cal.3d 301, 306-307 [162 Cal.Rptr. 30, 605 P.2d 859].) "We must read a statute in light of both the objective it seeks to achieve and the evil it seeks to avert." (*People* v. *Alday* (1973) 10 Cal.3d 392, 395 [110 Cal.Rptr. 617, 515 P.2d 1169].) We must also construe the statute "in a reasonable and common sense manner consistent with [its] apparent purpose and the legislative intent underlying [it]— one practical, rather than technical, and one promoting a wise policy rather than mischief or absurdity." (*Herbert Hawkins Realtors, Inc.* v. *Milheiser* (1983) 140 Cal.App.3d 334, 338 [189 Cal.Rptr. 450].)

The legislative intent behind section 4532 is obvious: to deter escapes by persons who have been booked and incarcerated, or previously incarcerated and temporarily in custody outside the confinement facility. (See *People* v. *Diaz* (1978) 22 Cal.3d 712, 716 [150 Cal.Rptr. 471, 586 P.2d 952].) The evident purpose of such deterrence is to protect the integrity of custodial

authority and confinement facilities. (See *In re Culver* (1968) 69 Cal.2d 898, 903 [73 Cal.Rptr. 393, 447 P.2d 633].)

■  Section 4532(b) in no way limits the scope of the term "felony" or excludes therefrom foreign felonies. On the contrary, the term, as used, naturally and reasonably includes felonies from any jurisdiction. In light of the purposes which this section was meant to achieve and the evil it seeks to avert, we believe the term should have this all-inclusive scope. (Cf. *Barnes* v. *District Court of Appeal* (1918) 178 Cal. 500, 504-505 [173 P. 1100]; *People* v. *Perry* (1962) 204 Cal.App.2d 201, 204-205 [22 Cal.Rptr. 54]; *Matter of Application of Shepard* (1917) 35 Cal.App. 492, 497-499 [170 P. 442].)[2]

Where two county jail prisoners, one being held on a foreign and the other on a state felony charge, escape together, it seems contrary to reason and common sense to conclude that only the "state" prisoner is guilty of escape under section 4532(b).  ■ ■ ■ ■  Clearly the one prisoner's technical status as a "foreign" prisoner does not make his conduct any less of an unlawful departure from the limits of his custody[3] and breach of the jail's integrity than that of any other prisoner. Moreover, where, as here, a "foreign" prisoner violates the security and integrity of California custodial authority and facilities, it would be contrary to the intent of the statute and, in our view, absurd, to interpret the statute in a way that (1) renders the state powerless to punish the "foreign" prisoner/escapee and (2) leaves the state totally dependent on the laws and prosecutorial discretion of a foreign jurisdiction for protection against such a prisoner's escape.

---

[2]In *Barnes* and *Shepard,* the courts interpreted a statute that permitted disbarment upon proof that an attorney was convicted of "a felony or misdemeanor, involving moral turpitude." (See former § 287, Code Civ. Proc., repealed by Stats. 1939, ch. 34, § 30013, pp. 357, 362, later reenacted as §§ 6101, 6103, 6105, Bus. & Prof. Code; see Historical Note, West's Ann. Bus. & Prof. Code (1974) § 6101.) Both courts rejected the argument that the term "felony" referred only to California felonies. Rather the courts concluded that "felony" referred to any felony because (1) the statutory language was broad and unlimited, and (2) a contrary interpretation would be unreasonable in light of the legislative intent. (*Barnes, supra,* 178 Cal. 500, 504-505; *Shepard, supra,* 35 Cal.App. 492, 497-499; see also *In re Craig* (1938) 12 Cal.2d 93, 96-97 [82 P.2d 442].)

In *Perry, supra,* 204 Cal.App.2d 201, the court concluded that a prior petit theft conviction in a foreign state is to be considered in determining the applicability of section 666, which at that time provided that " 'Every person who, having been convicted of petit larceny or petit theft and having served a term therefor in any penal institution or having been imprisoned therein as a condition of probation for such offense, commits any crime after such conviction is punishable therefor . . . .' " in various different ways outlined in the statute. This conclusion was based upon the lack of statutory language limiting applicability to California offenses and the legislative intent behind the statute. (*Id.,* at p. 202.)

[3]Escape is commonly defined as the unlawful departure from the limits of custody. (*People* v. *Gallegos* (1974) 39 Cal.App.3d 512, 515 [114 Cal.Rptr. 166]; *People* v. *Herrera* (1967) 255 Cal.App.2d 469, 472 [63 Cal.Rptr. 96]; *People* v. *Jones* (1958) 163 Cal.App.2d 118, 123 [329 P.2d 37]; *People* v. *Quijada* (1921) 53 Cal.App. 39, 41 [199 P. 854].)

Defendant's interpretation of section 4532(b) reflects a basic misunderstanding of the reason behind the Legislature's use of the term "felony" in the statute. Section 4532, subdivision (a) (hereafter section 4532(a)), proscribes escapes by prisoners being held for misdemeanors. Section 4532(b) proscribes escapes by prisoners being held for felonies. Read as a whole, section 4532 indicates a legislative intent to deter and punish escapes by prisoners who have been "arrested and booked for, charged with, or convicted of" any crime greater than an infraction. (Cf. *In re Thompson* (1918) 37 Cal.App. 344, 347-348 [174 P. 86].) The statute has "misdemeanor" and "felony" subdivisions, however, because the sentence to be imposed for an escape depends on the seriousness of the offense for which the prisoner was initially confined and whether the escape was accomplished by force or violence. (§ 4532.)

The terms "felony" and "misdemeanor," as used in section 4532, were intended to be used to determine the *punishment* for an escape and not, as defendant suggests, to provide a jurisdictional definition of the class of prisoners capable of violating the statute.

Defendant seeks to import section 17's definition into section 4532 to limit the meaning of "felony" to California felonies. However, he cites no case in which section 17 has been used for this purpose.[4] Indeed, that section was designed for a different, more modest purpose, namely, to "provid[e] a convenient division of crimes into the lesser and the greater, to the end that, in other legislation, the terminology and segregation provided by that section might be taken advantage of whenever, in such legislation, it became necessary to draw a distinction or to allow a difference between crimes of the greater and crimes of the lesser magnitude." (*In re Thompson, supra,* 37 Cal.App. 344, 347.)

Where the use of a foreign offense is clearly permitted, section 17 may not be used to determine whether it is a felony or misdemeanor. (*People* v. *Theodore* (1953) 121 Cal.App.2d 17, 29 [262 P.2d 630]; *Caminetti* v. *Imperial Mut. L. Ins. Co.* (1943) 59 Cal.App.2d 476, 490 [139 P.2d 681].) It is the law of the jurisdiction where the offense is committed that determines its character as a felony or misdemeanor. (*Ibid.*) Thus, the accepted use of

[4]We recognize, as defendant points out, that in other statutes the Legislature has expressly provided for the use of both state and foreign felonies and felony convictions. (See, e.g., §§ 667, subd. (a); 667.5, subds. (a), (b), (f), (h); 668; 1203, subds. (e)(4), (e)(5), (e)(6); 1203.08, subd. (a); 12021, subd. (a); Ins. Code, § 704.5; Evid. Code, § 788, subd. (d); Bus. & Prof. Code, § 6101.) Using this fact and the fact that section 4532(b) does not define the scope of "felony," defendant argues that the Legislature intended to limit "felony" to California felonies. While this argument is not unreasonable, we find it unpersuasive in light of our discussion of the legislative intent and purposes behind section 4532(a), which, as noted above, indicates the need for an unlimited definition of "felony."

the section 17 definition has been carefully limited to determining the degrees of California offenses.

Defendant's suggested use goes beyond drawing a distinction between crimes of greater and lesser magnitude and would draw a jurisdictional line between criminal and noncriminal conduct. In light of our discussion, we do not believe that section 17 may be used for this purpose.

■   Finally, we recognize that when a penal statute is reasonably susceptible of two constructions, that more favorable to the defendant should be adopted. (*People* v. *Davis* (1981) 29 Cal.3d 814, 828-829 [176 Cal.Rptr. 521, 633 P.2d 186].) However, this rule is not inflexible and courts decline to apply it where it leads to results that are contrary to legislative intent or that fail to prevent the harm that is identified in the statute or that override common sense and create palpable absurdities. (*In re Haines* (1925) 195 Cal. 605, 611-612 [234 P. 883]; *People* v. *Fair* (1967) 254 Cal.App.2d 890, 893 [62 Cal.Rptr. 632]; *People* v. *Bradley* (1983) 146 Cal.App.3d 721, 725 [194 Cal.Rptr. 549]; see also, e.g., *People* v. *Alday, supra,* 10 Cal.3d 392, 395; *People* v. *Hallner* (1954) 43 Cal.2d 715, 721 [277 P.2d 393]; *Leslie Salt Co.* v. *San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605, 615 [200 Cal.Rptr. 575]; *Southland Mechanical Constructors Corp.* v. *Nixen* (1981) 119 Cal.App.3d 417, 430-431 [173 Cal.Rptr. 917]; *Generes* v. *Justice Court* (1980) 106 Cal.App.3d 678, 681-684 [165 Cal.Rptr. 222]; *People* v. *Hacker Emporium, Inc.* (1971) 15 Cal.App.3d 474, 477-478 [93 Cal.Rptr. 132].)

In this instance, defendant's interpretation is unreasonable—a clever but overly technical and legalistic attempt to exclude a certain type of prisoner from the purview of the escape statute based on an irrelevant distinction between California and foreign prisoners who are lodged in our confinement facilities. Even assuming, arguendo, that defendant's interpretation was superficially reasonable, we would not apply this rule in his favor because it frustrates the legislative intent to protect the integrity of state and local jails and prisons. We hold that the term "felony" in section 4532(b) refers to both state and foreign felonies.[5]

## II.

■   Defendant contends that the court's instruction on escape by force or violence was erroneous.

---

[5]By necessary implication, we also hold that the term "misdemeanor" in section 4532(a) refers to both state and foreign misdemeanors.

Subdivisions (a) and (b) of section 4532 generally proscribe escapes effected by any means. However, both subdivisions provide "that if such escape or attempt to escape is by force or violence," the escapee is subject to increased punishment.

The trial court instructed the jury that defendant was guilty of escape by "force or violence" if he "knew that force or violence had been used by others which resulted in conditions enabling [him] to escape . . . ."[6]

Defendant points out that he did not personally use force or violence and had no *prior* knowledge of the other prisoners' plan to escape by using force or violence. Instead, he simply took advantage of the situation created by these other escaping prisoners and left through the doors that they had left unlocked. Therefore, he argues, his escape was "sufficiently independent" of the other prisoners' acts to allow the jury to have found him guilty of escape without force or violence. He claims that the court's instruction deprived him of this defense to the aggravated punishment under section 4532(b).

Defendant cites no authority for the proposition that to be subject to the aggravated punishment, an escapee must either have personally used, or indirectly participated in by aiding and abetting another's use of, force or violence. By such an argument he would have us convert a penalty into an element of the crime of escape. It is not; it is simply an *enhancement*. If the crime of escape is accomplished by the use of force or violence, then the penalty is increased. The enhancement provisions expressly focus on whether an "escape or attempt to escape is by force or violence . . . ." The statute was not drafted in terms of whether a particular prisoner personally or in concert with others used force or violence. (Compare § 4532 with the enhancement provisions for the use of a firearm or dangerous weapon, §§ 12022, 12022.5; or the infliction of great bodily injury, §§ 12022.7, 12022.8.)

The language of the enhancement provision reflects a legislative intent to deter the use of force and violence against, and thus to protect, other people.

---

[6]The court rejected an instruction proposed by defendant which provided, in relevant part: "In order for you to find that the Defendant escaped by the use of force or violence, you must be convinced beyond a reasonable doubt that Defendant either: [¶] 1. Personally used such force or violence in the commission of his escape; or [¶] 2. Aided or abetted another in the use of such force or violence. [¶] A person aids or abets in the use of such force or violence, if, with knowledge of the unlawful purpose of the perpetrator of such force or violence, he aids, promotes, encourages or instigates by act or advice the use of such force or violence. [¶] The fact that other persons by the use of force or violence created conditions which made it possible for Defendant to escape is not sufficient for you to find that Defendant's escape was by the use or force or violence."

The People suggest that the enhancement was also intended to deter mass escapes. They point out that when a few prisoners use force or violence, "it becomes possible for a much greater number of prisoners to flee. In this case, were it not for the use of weapons, the entire cadre of deputies could not have been captured. That capture resulted in the escape of 13 prisoners, appellant included." The People argue that the enhancement provision seeks "to punish by an aggravated term . . . those inmates who knowingly benefitted from the use of violence. Ideally, the enhanced sentence will minimize, if not totally eliminate, the number of prisoners who flee when guns are introduced and guards are forcibly subdued. This result is not unfair to the prisoner who does not actually use force for he must know that force has been employed before he is subject to the increased penalty."[7] This argument is reasonable and persuasive.

We hold that the enhancement provisions in subdivisions (a) and (b) of section 4532 apply to prisoners who escape knowing that the previous or contemporaneous use of force or violence created the conditions that made their escape possible. The court's instruction embodied this holding and was, therefore, proper.

We are not persuaded to the contrary by defendant's argument by analogy that because he took advantage of a situation that was created by others, he is like "the person who removes property from a corpse killed by another, and who is therefore guilty of the lesser crime of theft from a corpse, not robbery." Nor are we persuaded by defendant's citation to *People* v. *Markus* (1978) 82 Cal.App.3d 477 [147 Cal.Rptr. 151], for the proposition that in order to hold a person liable for a crime on the theory that he was an aider and abettor, it must be shown that he knew the extent of the acts committed by the actual perpetrators of the crime. Defendant did not aid and abet his own escape nor was he charged with aiding and abetting another prisoner's escape by force or violence.

III.*

·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·

---

[7]Defendant does not contend on appeal that there was insufficient evidence to support the finding that he knew that force and/or violence had been used when he made his escape. Therefore, this issue is waived. (*Title G. & T. Co.* v. *Fraternal Finance Co.* (1934) 220 Cal. 362, 363 [30 P.2d 515]; *Estate of Randall* (1924) 194 Cal. 725, 728-729 [230 P. 445]; see 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 425, pp. 4391-4393, and cases cited therein.)

*See footnote, *ante,* page 760.

The judgment is affirmed.

Kline, P. J., and Smith, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 20, 1985.