[No. S014257. Jan. 7, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
ERROL PIETERS, Defendant and Appellant.

**COUNSEL**

Handy Horiye, under appointment by the Supreme Court, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White and Richard B. Iglehart, Chief Assistant Attorneys General, Harley D. Mayfield, Assistant Attorney General, Robert M. Foster, Raquel Gonzalez and Carl H. Horst, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LUCAS, C. J.**—We granted review to consider (i) whether "drug quantity" enhancements imposed pursuant to Health and Safety Code section 11370.4

(hereafter section 11370.4)[1] were impliedly excepted from the double-base-term limitation of former Penal Code section 1170.1, subdivision (g) (hereafter former Penal Code section 1170.1(g))[2] prior to the effective date of the present explicit exception and, if so, (ii) whether the enhancements are triggered by the weight of drugs in their pure form only or by the total weight of a mixture containing the drug (i.e., the weight of a "cut" or adulterated drug). We conclude the enhancements are impliedly excepted from the double-base-term limitation and are imposed according to the total weight of any compound or mixture containing a drug enumerated by section 11370.4.

## I. FACTS

Defendant Errol Pieters arranged a sale of cocaine to an undercover police officer in July 1987. He was arrested in a vehicle containing just over 11 pounds of a white, powdery substance, later proved to be 83 percent cocaine. A jury convicted defendant of violating Health and Safety Code section 11352 (offer to sell or transportation of a narcotic; hereafter section 11352) and Penal Code section 182.1 (conspiracy), and found true the allegation that the substance containing cocaine weighed more than 10 pounds (§ 11370.4, subd. (a)(2)). The trial court sentenced defendant to a total of eight years in state prison, consisting of a mitigated base term of three years for the section 11352 violation and a consecutive term of five years for the section 11370.4 enhancement.

Defendant appealed, contending that his sentence violated the double-base-term limit and that because he possessed less than 10 pounds of pure

---

[1] At all times applicable here the relevant portion of section 11370.4 provided:

"(a) Any person convicted of a violation of Section 11351 or 11352 with respect to a substance containing heroin or cocaine shall receive an additional term as follows:

"(1) Where the substance exceeds three pounds by weight, the person shall receive an additional term of three years.

"(2) Where the substance exceeds 10 pounds by weight, the person shall receive an additional term of five years.

"(3) Where the substance exceeds 25 pounds by weight, the person shall receive an additional term of 10 years."

A 15-year enhancement was added in 1988 for substances exceeding 100 pounds. (Stats. 1987, ch. 1174, § 6.5, p. 4157.)

[2] As applicable here, former Penal Code section 1170.1(g) read: "The term of imprisonment shall not exceed twice the number of years imposed by the trial court as the base term pursuant to subdivision (b) of [Penal Code] Section 1170 unless the defendant stands convicted of a 'violent felony' as defined in subdivision (c) of [Penal Code] Section 667.5, or a consecutive sentence is being imposed pursuant to subdivision (c) of this section, or an enhancement is imposed pursuant to [Penal Code] Section 12022, 12022.4, 12022.5, 12022.6, 12022.7, or 12022.9 or the defendant stands convicted of felony escape from an institution in which he is lawfully confined." Effective January 1, 1988, the statute expressly included section 11370.4 among the excepted enhancements. (Stats. 1987, ch. 1423, § 3.7, p. 5274.)

cocaine, insufficient evidence supported the quantity enhancement. The Court of Appeal held sufficient evidence supported the quantity enhancement but agreed that such an enhancement imposed prior to 1988 could not exceed the double-base-term limit. Accordingly, it affirmed the conviction for the section 11352 violation, but remanded for resentencing as to the quantity enhancement.

## II. THE DOUBLE-BASE-TERM LIMITATION

Quantity enhancements under section 11370.4 were enacted in 1985. (Stats. 1985, ch. 1398, § 3, pp. 4948-4949.) The express legislative purpose in adding this section was "to punish more severely those persons who are in the regular business of trafficking in, or production of, narcotics and those persons who deal in large quantities of narcotics as opposed to individuals who have a less serious, occasional, or relatively minor role in this activity." (Stats. 1985, ch. 1398, § 1, p. 4948.)

The double-base-term limitation, on the other hand, first became operative in 1977. (Former Pen. Code, § 1170.1a, as added by Stats. 1976, ch. 1139, § 273, p. 5140; renumbered as Pen. Code, § 1170.1 and amended by Stats. 1977, ch. 165, § 17, p. 649.) In cases involving multiple sentences, this rule limits the maximum term to twice the number of years imposed as the base term under Penal Code section 1170, subdivision (b). Then, as now, the rule admitted specific exceptions. Quantity enhancements pursuant to section 11370.4, however, were not explicitly included among those exceptions until 1988—after defendant had committed the crimes charged. (Stats. 1987, ch. 1423, § 3.7, p. 5274.) **(1a)** Because defendant's eight-year sentence is more than double his three-year base term, the issue before us is whether section 11370.4 created an implied exception to the double-base-term limit even before the 1988 amendment to former Penal Code section 1170.1(g).

■ The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. (*People* v. *Craft* (1986) 41 Cal.3d 554, 559 [224 Cal.Rptr. 626, 715 P.2d 585]; *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658 [147 Cal.Rptr. 359, 580 P.2d 1155].) In order to determine this intent, we begin by examining the language of the statute. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; *Palos Verdes Faculty Assn., supra,* at p. 658.) But "[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." (*Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014], citations omitted,

internal quotation marks omitted; see also *People v. Davis* (1985) 166 Cal.App.3d 760, 766 [212 Cal.Rptr. 673] [although reasonable doubts as to ambiguous criminal statute should normally be resolved in favor of defendant, rule does not apply where result is absurd or contrary to legislative intent].) Thus, "[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." (*Lungren v. Deukmejian, supra,* at p. 735.) ■ Finally, we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." (*Clean Air Constituency v. California State Air Resources Bd.* (1974) 11 Cal.3d 801, 814 [114 Cal.Rptr. 577, 523 P.2d 617].) With these principles in mind, we examine the probable intent of the Legislature in enacting section 11370.4.

■ The People concede the literal language of section 11370.4 is unambiguous. As originally enacted, enhancements under this section applied only if three conditions were satisfied: (i) the defendant was convicted of violating Health and Safety Code section 11351 or 11352; (ii) such violation involved "a substance containing heroin or cocaine"; and (iii) the substance must have exceeded three, ten, or twenty-five pounds. If all three conditions were met, the defendant was subject to a three-, five-, or ten-year enhancement. The statute made no reference to the double-base-term limitation. The People argue, however, that unless we imply such an exception, section 11370.4 would be rendered essentially nugatory as applied to pre-1988 offenses.

In support of this argument, the People draw our attention to *People v. Carvajal* (1988) 202 Cal.App.3d 487 [249 Cal.Rptr. 368]. There the Court of Appeal initially observed that section 11352 provides allowable base terms of three, four, or five years. (202 Cal.App.3d at p. 501.) The court reasoned that if section 11370.4 were subject to the double-base-term limitation, only the three-year enhancement could be applied regardless of the chosen base term: a five-year enhancement could be imposed only if the defendant received the upper, five-year base term, and a ten-year enhancement "*could never be imposed.*" (202 Cal.App.3d at p. 501, italics in original.) The court concluded it would have been absurd for the Legislature to have created a provision that could never be given effect, especially when such an interpretation would frustrate the Legislature's express purpose of punishing drug dealers in proportion to the amount of drugs possessed. (*Id.* at pp. 501-502.) It therefore held the double-base-term rule inapplicable to enhancements under section 11370.4, "despite the Legislature's initial, inadvertent failure to include such enhancements among the enumerated exclusions." (202 Cal.App.3d at p. 502; see also *People v. Garcia* (1989) 211 Cal.App.3d 1096, 1101 [260 Cal.Rptr. 71] [applying *Carvajal*'s analysis in

deciding former Pen. Code, § 1170.1(g) does not apply to three-year enhancements under Health & Saf. Code, § 11370.2, subd. (a)].)[3]

We employed similar reasoning in *People v. Jackson* (1985) 37 Cal.3d 826, 837-839 [210 Cal.Rptr. 623, 694 P.2d 736], in which we held the double-base-term limitation inapplicable to five-year enhancements imposed for prior serious felony convictions pursuant to Penal Code section 667. We noted that if former Penal Code section 1170.1(g) applied, the five-year enhancements under Penal Code section 667 could only rarely be imposed. In the case of a prior burglary conviction (one of the "serious felonies" enumerated in Pen. Code, § 667), for instance, we acknowledged that the full five-year enhancement could be given effect only if a defendant received the aggravated base term of six years. (37 Cal.3d at p. 838.) In order to carry out the apparent intent of Penal Code section 667, we regarded the failure to amend former Penal Code section 1170.1(g) as a "draftsman's oversight." (37 Cal.3d at p. 838, fn. 15.)

The Court of Appeal in the present case rejected and distinguished the reasoning of *Carvajal* and *Jackson*. It first contested the assertion in *Carvajal* that 10-year enhancements could never be imposed. The court explained that the quantity enhancement could always be "imposed"; only that portion of the enhancement exceeding the double-base-term would need to be stayed. (See Cal. Rules of Court, rule 447; *People v. Benton* (1979) 100 Cal.App.3d 92, 103 [161 Cal.Rptr. 12].) Furthermore, the full enhancement could be enforced whenever another exception listed in former Penal Code section 1170.1(g) applied. (See generally *People v. Magill* (1986) 41 Cal.3d 777, 781 [224 Cal.Rptr. 702, 715 P.2d 662] [presence of any exception listed in former Pen. Code, § 1170.1(g) renders the double-base-term rule inapplicable].)

The Court of Appeal found *Jackson* (*supra*, 37 Cal.3d 826) inapplicable because that decision interpreted a statutory provision created by initiative.[4] Reasoning that initiatives often suffer from poor drafting, and that courts must accordingly be willing to make greater allowances for oversights, the court declined to apply *Jackson* to a legislative enactment. The court assumed the Legislature was aware of former Penal Code section 1170.1(g) when it enacted section 11370.4 (see *In re Misener* (1985) 38 Cal.3d 543, 552 [213 Cal.Rptr. 569, 698 P.2d 637]), and concluded that creating a statutory exception where the Legislature has failed to do so would intrude

---

[3] This same conclusion would also apply to Health and Safety Code section 11351, which provides base terms of two, three, or four years.

[4] *Penal Code section 667 was enacted in 1982 as part of Proposition 8 (the so-called "Victims' Bill of Rights").*

upon a legislative function (see *Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 282 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]).

The Court of Appeal's reasoning is not convincing. The Legislature added section 11370.4 to punish dealers of large amounts of drugs in direct proportion to the quantity of drugs involved. This intent is evidenced by both the express purpose of the section and the graduated sentence enhancements provided therein. In rejecting the reasoning of *Carvajal* (*supra*, 202 Cal.App.3d 487), the Court of Appeal failed to give effect to this intent. If, as suggested by the Court of Appeal, trial courts should stay the portion of an enhancement exceeding the double-base-term limit, those defendants possessing more than 25 pounds of a controlled substance would be punished the same as those with 10 pounds. Such a result would defeat the manifest intention of the Legislature in adding section 11370.4.

Likewise, conditioning section 11370.4 enhancements upon the occurrence of an exception enumerated in former Penal Code section 1170.1(g) would also frustrate the Legislature's intent. Former Penal Code section 1170.1(g) provided four types of exceptions to the double-base-term rule: (i) the defendant stood convicted of a violent felony (defined in Pen. Code, § 667.5, subd. (c)); (ii) a consecutive sentence was imposed pursuant to Penal Code section 1170.1, subdivision (c) (felonies committed while in prison); (iii) an enhancement was imposed pursuant to Penal Code section 12022, 12022.4, 12022.5, 12022.6, 12022.7, or 12022.9 (commission of felony involving firearm, destruction of property, or infliction of great bodily injury); or (iv) the defendant stood convicted of felony escape from prison. In light of the broadly stated statutory objective of punishing more severely "those persons [dealing] in large quantities of narcotics," we do not believe the Legislature intended full application of section 11370.4 to depend on the fortuitous availability of some unrelated exception. Any other interpretation would draw a distinction, for instance, between large quantities of drugs possessed by an escaped felon and similar amounts in the hands of a convicted narcotics dealer. Such a distinction would be at odds with the Legislature's desire to punish dealers qua dealers.

We agree with the Court of Appeal that our decision in *Jackson* (*supra*, 37 Cal.3d 826) is not controlling here; however, its reasoning remains persuasive. ■ Whether enacted directly by the People or by the Legislature, a statute should not be construed so as to render its provisions ineffective or contrary to a stated legislative objective. (See *People* v. *Craft*, *supra*, 41 Cal.3d at pp. 559-560.)

In this respect, the present case differs from other instances in which we have declined to find an implied exception to a penal statute. For example,

in *People* v. *Siko* (1988) 45 Cal.3d 820 [248 Cal.Rptr. 110, 755 P.2d 294], we examined whether the Legislature intended to partially repeal the prohibition against multiple punishment for crimes based on the same act or omission (Pen. Code, § 654) when it increased the punishment for persons convicted of serious sex crimes (see *id.*, § 667.5). We applied the general principle of statutory construction that repeal by implication is disfavored and held the Legislature did not intend to amend the century-old rule embodied in Penal Code section 654. (*Siko, supra,* 45 Cal.3d at pp. 824-826.)

Unlike the present case, *Siko* (*supra,* 45 Cal.3d 820) did not involve an unambiguous expression of legislative purpose, which would have been undermined by our failure to find an implied exception. Moreover, our interpretation did not leave language—let alone entire provisions—devoid of meaning. (See *id.* at p. 825 [leaving open possibility that disputed language was intended to alter judicial gloss on Pen. Code, § 654].)[5] ▮ Because we conclude the Court of Appeal's interpretation of section 11370.4 is inconsistent with the Legislature's stated purpose for that section, we decline to adopt it and instead hold the Legislature impliedly created an exception to former Penal Code section 1170.1(g) when it enacted section 11370.4.

### III. THE DEFINITION OF "SUBSTANCE"

As previously noted, defendant was arrested in a vehicle containing slightly over 11 pounds of a white powder, which later proved to be 83 percent cocaine. ▮ Defendant asserts the word "substance" as used in section 11370.4 does not refer to a mixture of different compounds but is in effect a shorthand notation for "controlled substance," which denotes an illicit drug in its pure form. He contends that because he possessed less than

---

[5] The present case also differs from *People* v. *Prather* (1990) 50 Cal.3d 428 [267 Cal.Rptr. 605, 787 P.2d 1012]. There we declined to apply the "draftsman's oversight" analysis in determining whether the double-base-term limitation excluded "prior prison term" enhancements under Penal Code section 667.5, subdivision (b). We noted that the Legislature had recently added several exceptions to former Penal Code section 1170.1(g), but had failed to include "prior prison term" enhancements. (*Prather, supra,* at p. 434.) Citing *Estate of McDill* (1975) 14 Cal.3d 831, 837-838 [122 Cal.Rptr. 754, 537 P.2d 874], we concluded the Legislature tacitly approved those aspects of the law generally before it, but left untouched by the amendments. (*Prather, supra,* 50 Cal.3d at p. 434.) Here, by contrast, the Legislature *has* amended former Penal Code section 1170.1(g) to exclude drug quantity enhancements under section 11370.4. (Stats. 1987, ch. 1423, § 3.7, p. 5274.) Although this amendment does not assist us in discovering the intent behind section 11370.4 as originally enacted, we observe the Legislature's subsequent actions do not conflict with our interpretation of that statute.

10 pounds of pure cocaine, there was insufficient evidence to support a quantity enhancement under section 11370.4, subdivision (a)(2).[6]

Defendant, however, fails to examine the word "substance" within its statutory context. Section 11370.4, subdivision (a), requires that a defendant be convicted with respect to "a substance containing . . . cocaine." The Court of Appeal observed that if it accepted defendant's interpretation, the words "substance containing" would either be rendered meaningless or produce an absurd result. We agree. Substituting defendant's definition, the requirement for imposing an enhancement under section 11370.4 would effectively read, "with respect to pure cocaine containing cocaine."

The Court of Appeal found a more likely interpretation of "substance containing . . . cocaine" to include " 'an identifiable chemical element, compound, or *mixture*—sometimes restricted to compounds and elements.' " (Quoting Webster's New Internat. Dict. (3d ed. 1981) p. 2279, italics added.) As the Court of Appeal noted, this definition comports with the express legislative objective: "The Legislature enacted . . . section 11370.4 to discourage the transfer of large quantities of cocaine and other controlled substances. No authority suggests ' "the severity of these sanctions must be finely tuned to correspond to the amount of pure [narcotic] involved in any given transaction . . . ." ' [Citation.] . . . The focus is on the *quantity*, not the *quality*, of the drug seized."[7]

We conclude that the Court of Appeal correctly interpreted the language of section 11370.4 in holding that enhancements under that section are triggered by the weight of a mixture containing the drug and not merely by the weight of the pure drug itself.[8]

---

[6]Defendant does not claim the substance in his possession was so diluted that it was incapable of producing a narcotic effect. We therefore need not decide whether the enhancements under section 11370.4 would apply when, for example, mere traces of cocaine are found in an otherwise weighty substance. (See *People* v. *Leal* (1966) 64 Cal.2d 504, 512 [50 Cal.Rptr. 777, 413 P.2d 665]; cf. *People* v. *Hardin* (1983) 149 Cal.App.3d 994, 997-1001 [197 Cal.Rptr. 194].)

[7]We note this interpretation forecloses instances in which a defendant has, for example, hidden a two pound package of cocaine within a twenty-five-pound sack of talcum powder. In such an example the cocaine would not be mixed with the talcum powder, but rather would remain a distinct entity—a substance in and of itself, to be weighed separately from the talcum powder for purposes of the enhancement statute.

[8]Both defendant and the People attempt to support their respective positions by referring us to the legislative history of section 11370.4. Aside from the fact that the various committee reports cited by the parties are inconclusive, we find it unnecessary to venture beyond the express language "substance containing . . . cocaine" in order to interpret section 11370.4.

## IV. Conclusion

We hold that quantity enhancements under section 11370.4 were impliedly excepted from the double-base-term limit of former Penal Code section 1170.1(g), before the latter section was explicitly amended to so provide. The words "substance containing . . . cocaine" in section 11370.4 unambiguously encompasses a mixture, and therefore the quantity enhancements under that section are determined by the weight of a mixture containing an illicit drug, not merely by the weight of the drug itself. The Court of Appeal's order remanding the case for resentencing is reversed with directions to affirm the judgment.

Panelli, J., Kennard, J., Arabian, J., and Eagleson, J.,* concurred.

**BROUSSARD, J.,** Concurring and Dissenting.—I concur in the majority opinion with regard to the definition of "substance" in determining quantity enhancements under Health and Safety Code section 11370.4[1] The statute is clear that the weight of a controlled mixture, not the weight of the pure drug, is to be used to determine the appropriate quantity enhancement. However, I must respectfully dissent from the majority's holding that we may enforce what the majority perceive as the Legislature's intent in enacting section 11370.4 notwithstanding unambiguous statutory language that would subject this section to the double-base-term limitation of former Penal Code section 1170.1, subdivision (g).

The People concede, and the majority do not dispute, that the statute is unambiguous: section 11370.4 as originally enacted was subject to the double-base-term limitation. I find this concession troubling in light of the principle we have enunciated repeatedly: " ' "[w]hen statutory language is thus clear and unambiguous there is no need for construction, and courts should not indulge in it." ' " (*People* v. *Weidert* (1985) 39 Cal.3d 836, 843 [218 Cal.Rptr. 57, 705 P.2d 380], quoting *In re Waters of Long Valley Creek Stream System* (1979) 25 Cal.3d 339, 348 [158 Cal.Rptr. 350, 599 P.2d 656].)

Even assuming some ambiguity, a number of rules of construction, as well as a commitment to refrain from judicial legislation, should lead us to a different result. Former Penal Code section 1170.1, subdivision (g), expressly states the exceptions to the general rule that all criminal sentences are subject to the double-base-term limitation. Prior to its amendment in 1988,

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.

this section did not mention any crime associated with the sale or possession of cocaine. " " "Under the familiar rule of construction, *expressio unius est exclusio alterius*, where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed. [Citation.]" ' " (*People* v. *Harris* (1989) 47 Cal.3d 1047, 1082 [255 Cal.Rptr. 352, 767 P.2d 619].) Thus, we should be wary of implying an exception to the double-base-term limitation for drug-quantity enhancements. Nor is this rule a mere formalism; the fact that the Legislature did not create an express exception to the double-base-term limitation is powerful, if not conclusive, evidence of legislative intent.

" '[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.' " (*United States* v. *Bass* (1971) 404 U.S. 336, 347 [30 L.Ed.2d 488, 496, 92 S.Ct. 515].) This maxim applies to punishment and sentencing as well as substantive offenses. (*Simpson* v. *United States* (1977) 435 U.S. 6, 14-15 [55 L.Ed.2d 70, 77-78, 98 S.Ct. 909].) We have espoused this principle on numerous occasions. (See, e.g., *People* v. *Overstreet* (1986) 42 Cal.3d 891, 896 [231 Cal.Rptr. 213, 726 P.2d 1288]; *People* v. *Weidert, supra,* 39 Cal.3d 836, 848.) This principle, too, supports a decision affirming the Court of Appeal.

The majority note but do not adequately apply a third rule of construction: we read every statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness. (Maj. opn., *ante,* at p. 899, citing *Clean Air Constituency* v. *California State Air Resources Bd.* (1977) 11 Cal.3d 801, 814 [114 Cal.Rptr. 577, 523 P.2d 617].) It is true that the Legislature, in enacting section 11370.4, intended "to punish dealers of large amounts of drugs in direct proportion to the quantity of drugs involved." (Maj. opn., *ante,* at p. 901.) But the majority do not consider the Legislature's intent, when it enacted former Penal Code 1170.1, subdivision (g),[2] to prevent excessive punishment for the substantive crimes which underlie the "base" term of a sentence.[3] The majority do not try to harmonize *both* of these principles but rather adopt one wholesale while ignoring the other.

Finally, the mere fact that this exception to the double-base-term limitation did not exist in statute when this case arose suggests that we should use

[2] Former Penal Code section 1170.1, subdivision (g), was initially adopted as Penal Code section 1170.1a, subdivision (f).

[3] It is obvious, however, that the Legislature is free to create new substantive crimes and sentencing guidelines in accordance with the severity of those crimes. The majority appear convinced that the Legislature that enacted section 11370.4 essentially intended to create a new substantive offense, wholesale or bulk distribution of a controlled mixture; if this was their intent, however, it is not apparent why the enacting Legislature did not simply amend the double-base-term limitation or create such a new substantive offense at the time.

restraint in implying an exception to the double-base-term limitation. We have noted that "[s]trict construction of penal statutes . . . guards against judicial usurpation of the legislative function which would result from enforcement of penalties when the legislative branch did not clearly prescribe them." (*People* v. *Overstreet, supra,* 42 Cal.3d 891, 896.) Further, application of this exception runs counter to the constitutional requirement of due process: "When a new penal statute is applied retrospectively to make punishable an act which was not criminal at the time it was performed, the defendant has been given no advance notice consistent with due process. And precisely the same effect occurs when such an act is made punishable under a preexisting statute but by means of an unforeseeable *judicial* enlargement thereof. [Citation.]" (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 634 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420], italics in original.)

Instead of following these rules of statutory construction, the majority justify their holding on the principle that we will not give statutory language a literal meaning where " 'absurd consequences' " will attach. (Maj. opn., *ante,* at p. 898.) The majority then cite a case on a state Treasurer's confirmation (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727 [248 Cal.Rptr. 115, 755 P.2d 299]) to suggest that " '[t]he intent prevails over the letter, and the letter will, if possible, be read as to conform to the spirit of the law.' " (Maj. opn., *ante,* at p. 899.)

I do not consider a literal interpretation of the statute an "absurd consequence." Section 11370.4 does not necessarily conflict with former Penal Code section 1170.1, subdivision (g), at all: in any particular case, the existence of another applicable exception to the double-base-term limitation would permit section 11370.4 enhancements to be applied in full. Even if one dismisses this possibility as unreasonably dependent upon a "fortuity," as the majority do, the law as the Court of Appeal applied it (i.e., limiting the enhancement to the base term—three years in this case) does not yield an "absurd consequence" as that term has been used in prior case law. It is distinguishable from *Younger* v. *Superior Court* (1978) 21 Cal.3d 102 [145 Cal.Rptr. 674, 577 P.2d 1014], a case in which we held that despite the literal language of section 11361.5, we would not require destruction of criminal records for possession of marijuana where charges are pending, fines remain unpaid, or the sentence is not yet served.[4] Here our holding

---

[4] The cases upon which *Younger* relies to establish "absurd consequences" are only distantly related to the facts of this case but serve to illustrate what outcomes we have found "absurd" in the past: *People* v. *Barksdale* (1972) 8 Cal.3d 320 [105 Cal.Rptr. 1, 503 P.2d 257] ("approval" of abortion within 20 weeks of conception does not implicitly authorize abortion at *any* time in the pregnancy); *Bruce* v. *Gregory* (1967) 65 Cal.2d 666 [56 Cal.Rptr. 265, 423 P.2d 193] (right to inspect public documents does not prohibit custodian from taking reason-

would not operate to render unenforceable a criminal statute as in *Younger*; instead we are merely asked to reconcile statutes that are *arguably* conflicting.

To justify their position, the majority argue that we have implicitly approved the correction of drafters' oversights in *People* v. *Jackson* (1985) 37 Cal.3d 826 [210 Cal.Rptr. 623, 694 P.2d 736]. Although the majority opinion recognizes that *Jackson* is distinguishable from this case, it concludes that we need not abandon its reasoning. In *Jackson*, we held a five-year enhancement for prior serious felony convictions valid in spite of the double-base-term limitation. We contrasted the clear intent of Proposition 8 with a literal reading of the statutes added by that initiative, and concluded that the language of the statutes was not intended but was rather a "draftsman's oversight."

Our holding in *Jackson, supra,* 37 Cal.3d 826, should not be applied to this case. We hold initiatives to a different standard than enactments by the Legislature because of the nature of the initiative process. Initiatives are the direct expression of the people, typically drafted without extended discussion or debate. Of Proposition 8, a far-reaching criminal initiative passed in 1982, we have recognized that "it would have been wholly unrealistic to require the proponents of Proposition 8 to anticipate and specify in advance every change in existing statutory provisions which could be expected to result from the adoption of that measure." (*Brosnahan* v. *Brown* (1982) 32 Cal.3d 236, 257 [186 Cal.Rptr. 30, 651 P.2d 274].) In contrast to the proponents of initiatives, legislators and their staffs are entirely devoted to the analysis and evaluation of proposed laws. Indeed, we presume that the Legislature has knowledge of all prior laws and enacts and amends statutes in light of those laws. (See, e.g., *Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874].)

We cannot tell with certainty whether the Legislature's 1988 amendment to the double-base-term limitation to include possession of cocaine and heroin represented an affirmation of the intent of the Legislature that enacted section 11370.4 or, instead, a revision to the law reflecting heightened concerns over drugs and drug-related crimes. It is plausible that the Legislature, in 1985, intended the maximum drug-quantity enhancement to be applied only in the circumstances where another exemption from former Penal Code section 1170.1, subdivision (g), applied. More likely, that Legislature never weighed its intent in enacting section 11370.4 against the intent expressed by the Legislature that enacted the double-base-term limitation.

able actions to protect those documents); and *Silver* v. *Brown* (1966) 63 Cal.2d 841 [48 Cal.Rptr. 609, 409 P.2d 689] (apportionment based upon faulty geographic assumptions may be corrected in spite of statute).

For us to attempt to fill in that blank for the Legislature is sheer speculation.

I am not convinced that this statute is susceptible to statutory construction. Further, assuming that ambiguity in the statutes exist, several basic rules of construction exist in support of the determination of the Court of Appeal; the conclusion the majority draw necessarily rejects these basic rules of construction. Finally, I believe that even if we were certain of the Legislature's intent in enacting section 11370.4, extending *Jackson*'s analysis to encompass *legislative* "oversights" is an ill-advised and unnecessary precedent, especially in light of the Legislature's amendment to the double-base-term limitation in 1988.

Mosk, J., concurred.