Filed 12/9/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E059859 |
| v. | (Super.Ct.No. INF1300854) |
| MARIO ALBERTO GONZALEZ, | **OPINION** |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  William S. Lebov, Judge. (Retired Judge of the Yolo Super. Ct. assigned by the Chief Justice pursuant to art. VI, §6 of the Cal. Const.)  Reversed.

Paul E. Zellerbach, District Attorney and Kelli Catlett, Deputy District Attorney, for Plaintiff and Appellant.

Gambale & Gambale and Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Respondent.

# I

## INTRODUCTION

On April 11, 2013, a felony complaint charged defendant and respondent Mario Alberto Gonzalez (defendant) with (1) five counts of violating Penal Code[1] section 422 (criminal threats) (counts 1 through 5), all of which also specially alleged violations of section 186.22, subdivision (b)(1)(B) (that defendant had the specific intent to promote, further and assist in criminal conduct by gang member); and (2) one count violating section 166, subdivision (a)(10) (disobeying the terms of an injunction) (count 6). The complaint also alleged that defendant had suffered a prior serious felony conviction for violating section 192, subdivision (a) (voluntary manslaughter), and section 245, subdivision (a)(2) (assault with a firearm), under section 667, subdivisions (a), (c), and (e)(1), and section 1170.12, subdivision (c)(1). The complaint further alleged that defendant suffered three prior offenses with state prison sentences under section 667.5, subdivision (b). Defendant was arraigned the same day. He entered pleas of not guilty to all charges and denied all special allegations.

On June 17, 2013, an information charged defendant with all of the counts previously alleged in the complaint, as well as two additional counts for misdemeanor violations of section 415, subdivision (l) (challenging another to fight in a public place). These counts also contained special allegations for violations of section 186.22, subdivision (d) (specific intent to promote, further and assist in criminal conduct by gang

---

[1]     All statutory references are to the Penal Code unless otherwise specified.

members).  On June 18, 2013, defendant was arraigned on the information.  He entered pleas of not guilty to all charges and denied all special allegations.

On August 9, 2013, defendant filed a motion to set aside the information and dismiss all counts alleging violations of section 422 (criminal threats) and 415 (challenging another to fight in a public place).  On August 21, 2013, the People filed an opposition to defendant's motion.  On August 23, 2013, the trial court held a hearing on the motion.  Thereafter, the court granted defendant's motion and dismissed counts 1 through 7 – all of the counts charging violations of sections 422 and 415, and the related allegations.  That same day, defendant pled guilty to count 8, a violation of section 166, subdivision (a)(10) (disobeying the terms of an injunction).  On October 22, 2013, the People filed a notice of appeal.

On appeal, the People contend that the trial court erred in granting defendant's motion to dismiss counts 1 through 5 (criminal threats).[2]  For the reasons set forth below, we agree with the People.  Therefore, we shall reverse the order setting aside the charges and remand the matter for further proceedings.

## II

## STATEMENT OF FACTS

On March 24, 2013, several off-duty Cathedral City police officers (John Doe 1, John Doe 2, Jane Doe 1) and friends (Jane Doe 2, Jane Doe 3) were eating dinner at a restaurant when one officer, John Doe 1, got up from the table to use the restroom.  On

---

[2]     The People do not challenge the dismissal of counts 6 and 7 (challenging another to fight in a public place).

3

his way, John Doe 1 recognized another patron, Melanie Franco, and smiled at her. Franco smirked back. As John Doe 1 approached the table, he realized that Franco, whom he knew from high school, was sitting with several male Hispanic adults, all of whom had tattoos. One of them was the defendant.

When John Doe 1 returned to his table, he noticed that a couple of the males eating with Franco were staring at him. They looked at John Doe 1 and his table in an "intimidating way." John Doe 1 then realized that at least one of the males had a "JT" tattoo on his hand. Because of his professional and personal experiences, John Doe 1 knew a "JT" tattoo stood for Jackson Terrace, a criminal street gang. John Doe 1 continued to watch the table and eventually saw Franco and the males leave the restaurant. As they left, the males continued to stare in John Doe 1's direction; he stared back.

John Doe 1 watched through the restaurant window and saw the two males enter a white, Ford Excursion that was parked the restaurant's parking lot. The car backed out of its space and toward John Doe 1's vehicle. John Doe 1 thought that the occupants of the Excursion possibly recognized his car or were checking the license plates to see what car he drove. The Excursion then pulled forward and out of the lot. As it passed the front window of the restaurant, the right, front passenger, later identified as defendant, made a Jackson Terrace gang sign with his hand. He also pointed his finger in the air toward the ceiling, allegedly simulating a gun. John Doe 1 and John Doe 2 saw the gesture and feared for the safety of themselves, their friends and people at the restaurant.

4

John Doe 1 next spotted the Excursion on Indio Boulevard in front of the restaurant. Defendant and his group looked toward John Doe 1 and his colleagues at the table in the window. The driver of the vehicle made the JT gang hand symbol again. In addition, the driver simulated a gun with his hands and made a slashing motion across his neck. John Doe 1 knew that flashing the gang sign in that context had the intended meaning of identifying the location as Jackson Terrace territory, and understood the flashing of the gang sign followed by the gesturing of a gun and slashing of the throat, coupled with the totality of the previous conduct, to be a threat to him and his fellow officers at the table.

John Doe 1's fellow officers, John Doe 2 and Jane Doe 1, also immediately recognized defendant and his party as potential gang members because of their visible and identifiable tattoos, and because of the gang symbols they subsequently directed at the officers. As a result, all three officers understood the actions by defendant, specifically the repeated flashing of the gang symbol and the purposeful staring, in combination with the simulated shooting and throat slashing hand gestures directed at them to be threats. These actions caused the officers to be fearful for their imminent safety.

In addition to the three officers, there were two other people with John Doe 1 at the time of the incident. Jane Doe 2, a police dispatcher, and Jane Doe 3, a civilian. Both Jane Doe 2 and Jane Doe 3 witnessed the exchange between John Doe 1 and defendant. Both Jane Does 2 and 3 became afraid and uncomfortable when defendant and his party began staring at their table. Like the officers, both of them understood the actions of

5

defendant to be threats. Both Jane Does 2 and 3 feared for their safety. In fact, Jane Doe 3 left the restaurant because she was afraid and feared that something was going to happen to them.

No words were exchanged between the two groups.

## III

## ANALYSIS

The People contend that the trial court erred in granting defendant's motion to dismiss counts 1 through 5 (criminal threats) under section 955. We agree.

On August 9, 2013, defense counsel filed a motion to set aside counts 1 through 7 of the information under section 995.[3] In her motion, counsel argued that counts 1 through 5 must be dismissed because there was no evidence that Gonzalez made any threat, orally or in writing.

On August 21, 2013, the People filed an opposition arguing that a criminal threat could be committed by a non-verbal gesture alone, and that an oral statement was not required.

On August 23, 2013, the trial court conducted a hearing on the matter. The court, in granting defendant's motion, stated, "[Section 422] . . . just doesn't cover the conduct. Nor does 415. Staring is not challenging a fight. . . . [¶] You can refile. You can get the proper section, you can charge 422 again, but I just don't see this as making a criminal threat."

---

[3] Because the People only appeal the court's order setting aside counts 1 through 5 (criminal threats), we shall limit our discussion to counts 1 through 5.

6

A defendant may be held to answer felony charges only if the evidence presented shows that "there is some rational ground for assuming the possibility that an offense has been committed and that the accused is guilty of it." (*People v. Superior Court* (*Lujan*) (1999) 73 Cal.App.4th 1123, 1127 (*Lujan*).) The standard of proof is "sufficient cause," which is generally equivalent to the reasonable or probable cause necessary to justify an arrest, but which need not be sufficient to support a conviction. (*People v. Casillas* (2001) 92 Cal.App.4th 171, 178.)

On review by appeal from an order setting aside the information on the ground that the defendant was committed without reasonable or probable cause, the reviewing court directly reviews the determination of the magistrate holding the defendant to answer rather than the ruling of the superior court. (*Lujan*, *supra*, 73 Cal.App.4th at p. 1127.) When the relevant facts are undisputed, the question of reasonable or probable cause is legal conclusion subject to independent appellate review. (*People v. Superior Court* (*Bell*) (2002) 99 Cal.App.4th 1334, 1339.) The relevant facts in this case are undisputed. We, therefore, shall independently review this case.

In this case, neither defendant nor his cohorts said a word or uttered a sound to John Doe 1 or any of the other four individuals with him. Defendant and his cohorts, however, made gang and other non-verbal threatening gestures. Therefore, the question at issue is whether defendant can be prosecuted for making criminal threats under section 422 when defendant did not say anything verbally, in writing or by electronic means to John Doe 1 or his friends.

Our role in construing the statutes is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*People v. Jefferson* (1999) 21 Cal.4th 86, 94.) "'"'Penal Code sections must generally be construed "'according to the fair import of their terms, with a view to effect its objects and to promote justice.'"' [Citations.] [¶] 'Consistent with that general principle, appellate courts first examine the language of the code section to determine whether the words used unequivocally express the Legislature's intent. If no ambiguity, uncertainty, or doubt about the meaning of the statute appear, the provision is to be applied according to its terms without further judicial construction. [Citations.] [¶] When the language of the section is on its face ambiguous or leaves doubt, … the court must resort to extrinsic aids to ascertain the purpose behind the statute and give the provision a judicially created meaning commensurate with that purpose. [Citation.]' [Citations]"' [Citation.]" (*People v. Franz* (2001) 88 Cal.App.4th 1426, 1440 (*Franz*); see also *People v.* Avila (2000) 80 Cal.App.4th 791, 796.) Finally, when a statute defining a crime or punishment is susceptible to two reasonable interpretations, we will "ordinarily adopt that interpretation more favorable to the defendant." (*People v. Avery* (2002) 27 Cal.4th 49, 57; see also *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 312-313.) However, "although true ambiguities are resolved in a defendant's favor, an appellate court should not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative intent." (*People v. Avery*, *supra*, at p. 58.)

The statute at issue in this case is section 422 (criminal threats). It provides:

"Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, *made verbally, in writing, or by means of an electronic communication device*, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished . . ." (§ 422, subd. (a), emphasis added.)

We must first determine if the words used in section 422 are unequivocal. Here, the crux of the appeal is whether nonverbal conduct may constitute a "statement" under section 422.

This issue was discussed in *Franz*, *supra*, 88 Cal.App.4th 1426. In *Franz*, the court held that "section 422 requires a verbal statement, not mere conduct." (*Id.* at p. 1439.) This holding, however, is dicta since the *Franz* court found that the defendant in *Franz* did make a verbal statement by making a "shushing" noise. (*Franz*, *supra*, 88 Cal.App.4th at p. 1447-1448.) This shushing noise, coupled with the defendant's throat-slashing gesture supported defendant's conviction under section 422. (*Id.* at p. 1448-1449.)

Nonetheless, since *Franz*, is the only published case that discusses whether nonverbal conduct may constitute a "statement" under section 422, we shall look further into the analysis set forth under *Franz*.

In reaching its conclusion, the *Franz* court acknowledged that "verbal" could include a verbal symbol, and also could mean 'consisting of or using words only and not involving action." (*Id.* at p. 1440.) The court, therefore, concluded that "[i]n light of these differing dictionary definitions of 'verbal,' it is apparent the language of section 422 is ambiguous, and we shall turn to other aids of interpretation." (*Ibid.*) On this point, we agree with the *Franz* court that the term "verbal" is unclear.

The court then noted that that the Legislature knew how to make section 422 applicable to nonverbal communications by comparing section 422 to the stalking statute. The court stated, "the 1988 enactment that amended section 422 also amended stalking statutes that expressly define 'threat' to include a verbal or written threat 'or a threat implied by a pattern of conduct or a combination of verbal, written or electronically communicated statements and conduct. . . .' (§ 646.9, subd. (g); Civ. Code, § 1708.7; Stats. 1988, ch. 825.) The omission of any reference to 'conduct' in section 422 suggests the Legislature did not intend for communicative conduct to be penalized in that statute." (*Franz*, *supra*, 88 Cal.App.4th at p. 1440.) Therefore, the third appellate district ultimately found that "in light of the Legislature's express inclusion of 'conduct' in the stalking statutes, and its omission from section 422, we have a doubt that is reasonable and realistic that the Legislature intended to include mere conduct within the ambit of section 422." (*Franz*, *supra*, 88 Cal.App.4th at p. 1441.)

We find the *Franz* court's comparison of section 422 with the stalking statute to be unsound. We acknowledge that the 1988 enactment amended both section 422 and the stalking statute. However, the fact that the Legislature did not include "conduct" in

10

section 422 is to no avail.  The stalking statute, section 646.9, specifically criminalizes conduct, not just verbal threats, as in section 422.  We agree with an analysis set forth in Valparaiso University's law review article:  "Stalking, by its nature, is a pattern of prohibited physical conduct that is designed to harass or place another in a constant state of fear or paranoia, whereas a terrorist threat is a credible communication of imminent peril designed to place another into a present state of apprehension of bodily harm.  To compare and analogize the statutory construction of these two sections is an error.  The actus reus prohibited by law for these crimes are different; therefore, statutory language describing the prohibited conduct would naturally prohibit different forms of physical action."  (Greer & Modell, *When a Threat is Not a Threat:  Why Persons Who Are Deaf or Hard of Hearing Are Left Unprotected by California Penal Code Section 422 and How the Courts Could Rectify It* (2011) 45 Val. U. L.Rev 1297, 1304.)

In this case, as provided above, in 1988, the Legislature amended section 422 to add the phrase "made verbally, in writing, or by means of an electronic communication device," in the first paragraph in an effort to define statement.  The Legislature, in enacting this amendment, stated:  "it is the intent of this act to clarify that electronic communications are included in the actions that can constitute the crimes of harassment and talking.  *It is not the intent of the Legislature, by adopting of this act, to restrict in any way the types of conduct or actions that can constitute harassment or stalking*."  (Sen. Bill No. 1796 (1997-1998 Reg. Sess.) Stats 1998, ch. 825, § 1, italics added.)

Prior to the amendment in 1988, a concurring opinion in *People v. Mendoza* (1997) 59 Cal.App.4th 1333 (*Mendoza*), stated that "section 422 does *not* require the

11

threat be literal or even verbal. Sending a government informant a dead, tongueless rat may well violate section 422." (*Id.* at p. 1347, original italics.) Although the court in *Franz* acknowledged the concurring opinion, it dismissed the case because "*Mendoza* predates the 1988 amendment to section 422[.]" (*Franz*, *supra*, 88 Cal.App.4th at p. 1442.) Looking at the legislative intent behind the 1988 amendment, however, it is clear that the Legislature added amended section 422 to include electronic communications in section 422, not to restrict the pre-amendment language of section 422. Although the statement made in *Mendoza*, *supra*, 49 Cal.App.4th 1333, was in a concurring opinion, it makes sense. As explained by the court, "[i]f the communication, by whatever means, was intended to convey and did convey an unequivocal, unconditional, immediate, and specific threat of great bodily injury or death, the statute has been violated." (*Id.* at p. 1347.)

In the respondent's brief, defendant acknowledges that a "'statement' is not necessarily limited to verbal or written communications. For example, as defined by Evidence Code section 255, a 'statement' means any 'oral or written verbal expression' *or* 'nonverbal conduct of a person intended by him as a substitute for oral or written verbal expression.'" Nonetheless, defendant argues that the 1988 amendment, in adding "'verbally, in writing, or by means of an electronic communication device' after the word 'statement' in its 1998 amendment, the legislature made clear its intent to criminalize only those threatening statements made orally, in writing, or by electronic communication and not any non-verbal statement or gesture. Thus, while a hand gesture might have qualified as a criminal threat prior to the 1998 amendment, a non-verbal

12

gesture cannot qualify as a criminal threat as the amended law stands now." However, as discussed above, the Legislature, in adopting the 1998 amendment, made clear that the intent of the amendment was to include electronic communications, not to restrict the pre-amendment language of section 422.

Moreover, we note that """"it is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." [Citations.] Thus, "the intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." [Citation.]"""" (*Calatayud v. State of California* (1998) 18 Cal.4th 1057, 1064-1065, quoting *People v. Pieters* (1991) 52 Cal.3d 894, 898-899.)

In this case, we find that it would be absurd to interpret the language of section 422 to exclude non-verbal and threatening gestures – such as flashing gang signs and simulating a pistol with hands – under the ambit of making criminal threats under that section, simply because defendant did not making a "shushing" sound or other noise. Threats are judged in their context and not solely on the specific words that were spoken. "[A]ll of the circumstances can and should be considered in determining whether a terrorist threat has been made." (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1014.) "A communication that is ambiguous on its face may nonetheless be found to be a criminal threat if the surrounding circumstances clarify the communication's meaning. [Citation.]" (*In re George T.* (2004) 33 Cal.4th 620, 635.) As evidenced by the legislative notes, the intent of the 1988 amendment was to include electronic communications under section 422 to keep up with the digital age, not to limit the

13

language of section 422. Therefore, we hold that the intimidating conduct by defendant satisfies the communication requirement under section 422.

## IV

## DISPOSITION

The trial court's order setting aside the charges is reversed. The case is remanded for further proceedings.

CERTIFIED FOR PUBLICATION


RICHLI
Acting P. J.

We concur:


KING
J.


MILLER
J.

14