[No. D031860. Fourth Dist., Div. One. Aug. 31, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID MARK CHAMBLESS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

## COUNSEL

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Carl H. Horst, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**HUFFMAN, J.**—David Mark Chambless appeals from a judgment ordering his two-year commitment to the custody of the State Department of Mental Health (DMH) following a jury finding that he is a sexually violent predator (SVP) within the meaning of the Sexually Violent Predators Act (the Act)

(Welf. & Inst. Code, § 6600 et seq.).[1] ▮▮▮ He contends the evidence is insufficient to establish he had previously committed a sexually violent offense against one of the victims, which is a prerequisite to application of the Act. Chambless also claims the doctrines of equitable and judicial estoppel preclude a finding his prior convictions for Penal Code section 288, subdivision (a) as to both victims were committed by force or duress or constituted substantial sexual conduct, and that the trial court erred in refusing to admit evidence in his defense.[2]

In the published portion of this opinion, we shall determine that there was sufficient evidence Chambless is an SVP because any touching of the genitals is sufficient to meet the required statutory definition under the Act of "substantial sexual conduct" by means of "masturbation of either the victim or the offender." (§ 6600.1.) In the unpublished portions, we reject Chambless's remaining contentions of error. Accordingly, we affirm the judgment.

## BACKGROUND

### *Summary of the Act*

Although our Supreme Court in *Hubbart* has provided a thorough review of the statutory scheme comprising the Act (see *Hubbart v. Superior Court, supra,* 19 Cal.4th at pp. 1143-1149), for the convenience of the reader, we repeat pertinent provisions relevant to the issues in this case.

The Act, which is contained in section 6600 et. seq., provides for the continued confinement in the custody of the DMH of those persons identified as SVP's before they have completed their prison or parole revocation

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] In his reply brief, Chambless concedes his constitutional challenges to the Act raised in his opening brief have been rejected by our Supreme Court in *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138 [81 Cal.Rptr.2d 492, 969 P.2d 584]. Although the court in *Hubbart* clearly addressed Chambless's claims regarding violations of due process based on the definition of "diagnosed mental disorder," volitional impairment, present dangerousness, standard of proof and lack of effective treatment, and of equal protection and of ex post facto laws, it did not specifically address the prohibitions against double jeopardy and cruel and/or unusual punishment. However, because the court in *Hubbart* found the Act not punitive in purpose or effect and that it did not impose liability or punishment for criminal conduct (*Hubbart v. Superior Court, supra,* 19 Cal.4th at p. 1179), Chambless's double jeopardy and cruel and unusual punishment claims raised in his opening brief have also been impliedly resolved against him. Moreover, it is well settled that double jeopardy and cruel and unusual punishment principles do not apply to civil commitment proceedings because they are not penal in nature. (See *O'Connor v. Donaldson* (1975) 422 U.S. 563, 588-589 [95 S.Ct. 2486, 2500, 45 L.Ed.2d 396]; *People v. Robinson* (1998) 63 Cal.App.4th 348, 350-352 [74 Cal.Rptr.2d 52]; *People v. Superior Court (Williams)* (1991) 233 Cal.App.3d 477, 486-487 [284 Cal.Rptr. 601].)

terms. It defines an SVP as "a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder[3] that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a).) "A 'sexually violent offense' refers to certain enumerated sex crimes 'committed by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person.'[4] (§ 6600, subd. (b), citing Pen. Code, §§ 261, subd. (a)(2) [rape of nonspouse], 262, subd. (a)(1) [rape of spouse], 264.1 [rape in concert], 286 [sodomy], 288, subds. (a) & (b) [lewd acts upon children under age 14], 288a [oral copulation], 289, subd. (a) [sexual penetration by foreign object].)" (*Hubbart* v. *Superior Court, supra*, 19 Cal.4th at p. 1145.) Further, "[i]f the victim of an underlying offense that is specified in subdivision (b) of Section 6600 is a child under the age of 14 and the offending act or acts involved substantial sexual conduct, the offense shall constitute a 'sexually violent offense' for purposes of Section 6600." (§ 6600.1, subd. (a).)

If the Department of Corrections determines the inmate approaching sentence completion may be an SVP, it refers him or her for evaluation to see if the inmate falls under the Act. (§ 6601, subds. (a), (b), (c) & (d).) When the evaluation reveals the inmate has suffered the required qualifying prior convictions (§§ 6600, subds. (a) & (b), 6600.1) and two licensed psychologists and/or psychiatrists agree the inmate "has a diagnosed mental disorder such that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody," the DMH transmits a request for a petition for commitment under the Act to the county in which the alleged SVP was last convicted, with copies of the evaluation reports and ·other supporting documents. (§ 6601, subds. (d), (h) & (i).) If a designated county's attorney concurs in the request, a petition for commitment is filed in that county's superior court. (§ 6601, subd. (i).)

Once filed, the superior court holds a hearing to determine whether there is "probable cause to believe that the individual named in the petition is

---

[3]Although a "diagnosed mental disorder" is not fully defined under the Act, such condition is stated to "include[] a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c).)

[4]For purposes of the Act, sexually violent offenses may also include a finding of not guilty by reason of insanity of an offense described in the Act, a conviction leading to a finding that the person was a mentally disordered sex offender, a conviction in another state of an offense that includes all the elements of an offense described in the Act, and a conviction before July 1, 1977, of an offense enumerated in the Act, even if the offender did not receive a determinate sentence for that crime. (§ 6600, subd. (a).)

likely to engage in sexually violent predatory[5] criminal behavior upon his or her release."[6] (§ 6602.) If such is found, the judge "shall" order that a trial be conducted "to determine whether the person is, by reason of a diagnosed mental disorder, a danger to the health and safety of others in that the person is likely to engage in acts of sexual violence upon his or her release . . . ." (§ 6602.)

The person subject to a trial under the Act is to remain in custody in a secure facility until the trial is completed. (§ 6602.) That person is entitled to trial by jury, the assistance of counsel, the right to retain experts or professional persons to perform further evaluations, and access to relevant medical and psychological reports. (§ 6603, subd. (a).) The trier of fact must determine beyond a reasonable doubt whether the person named in the petition is in fact an SVP. (§ 6604.) If the person is determined to be an SVP, he or she shall be committed to the custody of the DMH for two years "for appropriate treatment and confinement in a secure facility," subject to annual review and extension of commitment if the diagnosed mental disorder and the consequent danger to the community persists. (§§ 6604, 6605.) "[T]he person shall not be kept in actual custody longer than two years unless a subsequent extended commitment is obtained from the court incident to the filing of a new petition for commitment under [the Act]." (§ 6604.)

*Factual Summary*

On December 1, 1989, Chambless pleaded guilty to five counts of committing a lewd act on a child under age 14. (Pen. Code, § 288, subd. (a).) For these sex crimes, which involved three incidents, including oral copulation and masturbation with more than one victim, Chambless was sentenced to prison for 16 years.

On November 10, 1997, a petition was filed by the District Attorney of San Diego County alleging that Chambless was an SVP under the Act. Based on the above convictions, his determinate sentence, and the reports of two psychiatric professionals who, after separate evaluations, concurred that Chambless fit the Act's statutory qualifications, the People requested the superior court commence proceedings under the Act to determine whether Chambless should be committed as an SVP. After finding probable cause Chambless qualified under the Act as an SVP (§ 6602), the court set the matter for trial.

---

[5]The Act defines "predatory" as "an act directed toward a stranger, a person of casual acquaintance with whom no substantial relationship exists, or an individual with whom a relationship has been established or promoted for the primary purpose of victimization." (§ 6600, subd. (e).)

[6]The alleged SVP is entitled to the assistance of counsel at this hearing. (§ 6602.)

At trial, the People presented the testimony of the two psychologists, Drs. Charles Jackson and Mark Schwartz, who had performed the earlier clinical evaluations,[7] and who opined Chambless currently was an SVP under the Act. Each found Chambless had diagnosable mental disorders that affected his emotional or volitional capacity and predisposed him to engage in sexually violent conduct.[8] Relying on Chambless's probation report, his arrest record, rap sheet and medical records, in addition to the interview, each also found Chambless had previously committed two or more qualifying offenses under the Act. In the interview with Jackson, Chambless admitted he had fondled or touched the seven-year-old victim, Sandra B. (Sandy), but denied he had touched the other victim, nine-year-old Renee B. Chambless explained to Jackson he pled guilty to the five counts of molest, three with Sandy and two with Renee, because he was embarrassed and the plea agreement was a good deal since he had originally been charged with fifteen counts of sexual misconduct involving those victims.

The portion of the probation report entered into evidence at trial reflected that between June 1, 1989, and September 17, 1989, Chambless had molested Sandy when he babysat at her house while her mother went to the store. He pulled up Sandy's shirt, fondled her chest, then pulled down her pants and "played with [her] private parts." Chambless put his finger inside her and licked her vaginal area. He warned Sandy he would get very angry if she told anyone what happened.

Several months later, on September 17, 1989, Sandy and her sister Renee were at Chambless's house where he sat on the couch between them while showing them a pornographic videotape. He touched Renee on the outside of her "pee," underneath her panties, and also touched her "boobies." Renee said Chambless then took her hand and tried to force her to touch his "pee, referring to his penis." Renee said he was doing the same type of things to Sandy.

---

[7]Schwartz had interviewed Chambless on July 31, 1997, and Jackson had interviewed him on October 6, 1997.

[8]Jackson diagnosed Chambless as suffering from pedophilia, transvestitism, antisocial personality disorder and amphetamine abuse in institutional remission. He opined Chambless had a 36.7 percent chance of reoffending in his first five years after release and a 48.6 percent chance of reoffense within the first ten years. He believed Chambless's mental condition, coupled with his drug abuse, sexual deviancy, failure to accept responsibility for his conduct and lack of empathy toward his victims, increased these risk factors.

Schwartz diagnosed Chambless as suffering from pedophilia, transvestitism and antisocial personality disorder. He initially opined Chambless had a 48.6 percent chance of reoffending based on clinical assessment scales only, but believed the factors of Chambless's deviant sexual preferences, his failure to complete a drug program, his antisocial personality disorder, his history of prior offenses and the fact he had never been married increased his chance for reoffense to 62.85 percent.

The next day Sandy and Renee went to Chambless's house to swim. Afterwards, Chambless showed them more "dirty movies," took them into his bedroom, had them remove their swimsuits and dressed them in "teddies."[9] Chambless went into the bathroom and came out wearing his shirt and women's pink panties. Chambless made both girls "squeeze his penis." He showed them handcuffs, saying he put them on his girlfriends and "then . . . does it to them." He had the girls lie on the bed with him while he showed them "dirty magazines and naked pictures of his girlfriends."

Renee got dressed and left after Chambless touched her breasts through the teddie and tried to make her touch his penis again. Chambless told her not to tell or he would hurt her. Because Chambless had shown her a gun on an earlier occasion, Renee believed he would hurt her with the gun if she told anyone about what had happened. After Renee left, Chambless put some "strawberry stuff" in Sandy's hand and had her apply it to his penis. She dressed and left when he tried to put some of the lotion on her vaginal area.

Chambless testified he only remembered molesting Sandy at his home one time after she and her sister Renee had been swimming there.[10] At that time, he dressed Sandy in a teddie while they watched a pornographic movie and mutually fondled each other. He explained his fondling of Sandy as touching her vagina over the lips, not inside, and just rubbing it a minute or so. He denied he put his finger inside her or licked her "down there." Although he had also dressed Renee in a teddie, he denied he touched her or made her squeeze his penis. He also denied wearing pink female underwear in front of the girls.[11]

Chambless agreed to accept the plea agreement offered him because he was ashamed and wanted to get it over with. He claimed he was strung out on methamphetamine and had used crack cocaine before the sexual acts with Sandy occurred. He acknowledged he had a drug problem, but was not sure whether he had a sexual problem. He had stopped using drugs in 1994 while he was in prison after a talk with his father. He disagreed with the expert's diagnoses of pedophilia, transvestic fetishism and antisocial personality disorder. He related his background of hyperactivity treated by Ritalin, his

[9]Teddies are a type of women's lingerie.

[10]Because this was a civil proceeding, the People called Chambless as a witness in its case-in-chief.

[11]Chambless conceded he had worn such underwear the night before this incident when he took various pictures with a woman he had picked up. He claimed he collected ladies' panties as trophies.

long drug use, his legal problems and his attempts at recovery.[12] Chambless believed that solving his drug problems would solve any of his behaviorial problems.

Dr. Theodore Donaldson, a clinical psychologist, testified on Chambless's behalf.[13] Although he did not disagree with the People's experts' pedophilia diagnosis, after reviewing Chambless's materials and interviewing him, he would not have made such diagnosis himself. Nor would he have made a diagnosis of transvestic fetishism. Donaldson believed that amphetamine abuse was the most accurate diagnosis in this case, that Chambless was not volitionally impaired when he committed the earlier crimes, that although he participated in kinky sexual behavior, he was not predisposed to act out with children, that his chance of recidivism within 10 years was between 37 percent and 48.6 percent, and that he did not qualify as an SVP.

Dr. Clark Smith, a medical doctor certified in psychiatry and the director of a drug and alcohol treatment hospital, also testified on Chambless's behalf. Smith opined Chambless's drug use played a major role in his earlier sex crimes. Because of Chambless's prolonged history of drug use, Smith felt it would be difficult to make an accurate diagnosis that he had an antisocial personality disorder. Smith believed that if Chambless were to stop using drugs, his risk for reoffending would be greatly reduced.

In rebuttal, a San Diego police sergeant testified Chambless did not appear to be under the influence of drugs the day he was arrested for the sex offenses against the two young victims. In a subsequent search of his home, the police found numerous wadded-up catalog-type cutout photos of little girls between the ages of five and twelve years wearing various articles of clothes and underwear.

In closing argument, defense counsel conceded Chambless had committed substantial sexual conduct with Sandy as defined under the Act, but argued there was no evidence of such required substantial sexual conduct with Renee. The jury determined otherwise.

---

[12]The People's experts also testified about Chambless's earlier problems with hyperactivity and drugs and the attempts to control such problems.

[13]Chambless's father and sister also testified on his behalf. His father provided further testimony on Chambless's hyperactivity, history of drug use and hospitalizations. If Chambless were released, his father would provide a home for him and would make sure he received the necessary education and therapy he needs.

His sister testified Chambless had never molested her, she had never seen him act violently, and she would allow her children to be around him. She had cleaned Chambless's house after his arrest and did not find any "kinky porno" there.

## DISCUSSION

### I

#### *Sufficient Evidence of Masturbation*

In order to establish Chambless was an SVP, the People needed to prove that (1) he had been convicted of two separate sexually violent offenses against two or more victims; (2) he had served a determinate term; (3) he had a diagnosable mental disorder; and (4) such disorder made him a danger to the health and safety of others in that it was likely he would engage in sexually violent conduct if released. (§ 6600, subd. (a).) On appeal, Chambless challenges only the sufficiency of the evidence to support the first element regarding one of the victims. ■■■ Although he recognizes *People* v. *Superior Court (Johannes)* (1999) 70 Cal.App.4th 558, 563, 569 [82 Cal.Rptr.2d 852] has recently determined section 6600.1 modifies section 6600, subdivision (b) so that the People need only show the acts committed against a victim under 14 years old were either such as to constitute "substantial sexual conduct" as defined by section 6600.1, subdivision (b) or involved the use of "force, violence, duress, menace or fear of immediate and unlawful bodily injury" (§ 6600, subd. (b)), Chambless contends there is insufficient evidence to support a finding under either statutory alternative that he committed sexually violent offenses against Renee.[14] In support of his assertion his conduct with Renee fails to qualify as "substantial sexual conduct," Chambless notes there is no case law which addresses the extent of the touching required to meet the definition of such conduct by means of "masturbation of either the victim or the offender[,]" the only statutory conduct that could apply to him in this case. (§ 6600.1, subd. (b).) Without such "precedential guidelines that establish the degree or extent of touching required to constitute[] masturbation," he claims his conduct is insufficient to satisfy an element of the Act and his commitment under the Act must be reversed.

Relying on the type of conduct that showed substantial sexual conduct in *Johannes*[15] and the reasoning of *People* v. *Grim* (1992) 9 Cal.App.4th 1240 [11 Cal.Rptr.2d 884] in interpreting the definition of substantial sexual conduct found in Penal Code section 1203.066, subdivision (b), which is the

---

[14]Chambless pled guilty to counts 10 and 13 with regard to Renee. Count 10 alleged a violation of Penal Code section 288, subdivision (a) by Chambless touching Renee's vagina. Count 13 alleged a violation of that section by Renee touching Chambless's penis.

[15]In *Johannes*, defendant touched the young boys outside and inside their clothing and had them touch his penis. (*People* v. *Superior Court (Johannes)*, *supra*, 70 Cal.App.4th at p. 563.)

same definition of substantial sexual conduct the Legislature proposed and adopted for section 6600.1, subdivision (b) (Sen. Com. on Crim. Proc., Analysis of Sen. Bill No. 2161 (1995-1996 Reg. Sess.) as amended Aug. 28, 1996), the People posit we should determine that "any contact between the hand of one person and the sexual organ of another [constitutes] 'masturbation' and thus [qualifies as] 'substantial sexual conduct' " for purposes of the Act. Defined as such, the People assert the evidence in this case is sufficient to support a finding Chambless's acts with Renee satisfied such definition, qualifying them as sexually violent offenses under the Act, and therefore Chambless's commitment should be upheld.

As framed, the parties in essence ask us to interpret what constitutes masturbation for purposes of showing substantial sexual conduct under the Act and then to determine whether the evidence is sufficient to prove Chambless's conduct satisfied such definition to support the predicate offense with Renee, the second victim. As we explain, we agree with the People that the definition of masturbation under the Act encompasses any touching or contact, however slight, of the genitals of either the victim or the offender, with the requisite intent, and that there is sufficient evidence to support the finding that such sexual conduct occurred between Chambless and Renee.

(3) To reach our conclusion, we first review the pertinent sections of the Act under well-established rules of statutory construction, which require us "to ascertain the intent of the lawmakers so as to effectuate the purpose of the [statute]. [Citations.]" (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420]; see also *People* v. *Superior Court* (*Johannes*), *supra*, 70 Cal.App.4th at p. 564.) In doing so, we examine the relevant language of the statute and "accord words their usual, ordinary, and common sense meaning based on the language the Legislature used and the evident purpose for which the statute was adopted." (*In re Rojas* (1979) 23 Cal.3d 152, 155 [151 Cal.Rptr. 649, 588 P.2d 789].) In construing any particular provision of a statute, we do not insert words into it as such would "violate the cardinal rule that courts may not add provisions to a statute. [Citations.]" (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 827 [4 Cal.Rptr.2d 615, 823 P.2d 1216].) Nor are we permitted to rewrite the statute to conform to an assumed intent that does not appear from its plain language. (*Napa Valley Wine Train, Inc.* v. *Public Utilities Com.* (1990) 50 Cal.3d 370, 381 [267 Cal.Rptr. 569, 787 P.2d 976].) We presume the Legislature in amending a law "is deemed to be aware of statutes and judicial decisions already in effect and to have enacted the new statute in light thereof." (*People* v.

*Hernandez* (1988) 46 Cal.3d 194, 201 [249 Cal.Rptr. 850, 757 P.2d 1013], disapproved on another point in *People* v. *King* (1993) 5 Cal.4th 59, 78, fn. 5 [19 Cal.Rptr.2d 233, 851 P.2d 27].) "[W]e do not construe statutes [or their subdivisions] in isolation, but rather read every statute [and subdivision] 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" (*People* v. *Pieters*, *supra*, 52 Cal.3d at pp. 898-899.)

 With these rules in mind, we turn to the pertinent language of the statute in question. As noted earlier, section 6600.1, subdivision (a) states: "If the victim of an underlying offense that is specified in subdivision (b) of Section 6600 is a child under the age of 14 and the offending act or acts involved substantial sexual conduct, the offense shall constitute a 'sexually violent offense' for purposes of Section 6600." Subdivision (b) of section 6600.1 specifically provides that "'[s]ubstantial sexual conduct' means penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or *masturbation of either the victim or the offender*." (Italics added.)

By its plain language, section 6600.1, subdivision (b) lists specified sex acts or offenses which involve substantial sexual conduct when committed upon a child under the age of 14 years. The act of masturbation is one of the specific offenses. Such, however, is not a codified offense contained in our Penal Code. Nor has our search of California law revealed a legal definition for the term "masturbation." Rather, such word appears to have been used simply in its commonly understood meaning to describe the touching of one's own or another's private parts without quantitative requirement for purposes of defining conduct that was lewd or sexually motivated.[16] For example, in cases involving violations of Penal Code sections 314 and 647, subdivision (a), for the public display of a person's private parts in a willful

---

[16]As Chambless notes, the word "masturbation is defined in Webster's New World Dictionary (Third College ed. 1988) page 833 as a manipulation of 'one's own genitals, or the genitals of (another) for sexual gratification.'" The American Heritage Dictionary (new college ed. 1981) at page 805 defines masturbation as "[e]xcitation of the genital organs . . . . by means other than sexual intercourse." Although neither of these usual definitions provides a guide as to the amount of touching required to constitute masturbation, we do not believe such guidelines are necessary. In addition to the language of the subdivision in question, not including any quantitative limitations, common sense suggests that because the extent of genital touching that would excite or gratify one person may be different than the amount of touching required to do so for another, that the Legislature intended the statute to include an objective standard tied to the purpose for which the amended legislation was adopted, i.e., to protect children under the age of 14 "from recidivism among nonviolent repeat felony child molesters who currently have diagnosed mental disorders rendering them likely to repeat such conduct if released." (*People* v. *Superior Court* (*Johannes*), *supra*, 70 Cal.App.4th at p. 568.)

and lewd manner and for disorderly conduct based on such conduct, the term "masturbation" has been used to describe the type of prohibited conduct which involves the touching of the genitals. (See *In re Smith* (1972) 7 Cal.3d 362, 364-366 [102 Cal.Rptr. 335, 497 P.2d 807]; *People* v. *Swearington* (1977) 71 Cal.App.3d 935, 943-945 [140 Cal.Rptr. 5].)

In contrast to these offenses, Penal Code section 288, subdivision (a), to which Chambless pled guilty with regard to his conduct with Renee, does not require the touching involved be that of a sexual organ. (*People* v. *Raley* (1992) 2 Cal.4th 870, 907 [8 Cal.Rptr.2d 678, 830 P.2d 712].) The crux of such crime is that the perpetrator have the specific intent to arouse sexual desire when any touching of any part of the body of an underage child is committed. (*People* v. *Martinez* (1995) 11 Cal.4th 434, 444 [45 Cal.Rptr.2d 905, 903 P.2d 1037].) As the Supreme Court explained in *Martinez*, "[Penal Code] section 288 was enacted to provide children with 'special protection' from sexual exploitation. [Citation.] The statute recognizes that children are 'uniquely susceptible' to such abuse as a result of their dependence upon adults, smaller size, and relative naiveté. [Citation.] The statute also assumes that young victims suffer profound harm whenever they are perceived and used as objects of sexual desire. [Citation.] It seems clear that such concerns cannot be satisfied unless the kinds of sexual misconduct that result in criminal liability are greatly expanded where children are concerned." (*People* v. *Martinez, supra*, 11 Cal.4th at pp. 443-444.)

When the Act was initially enacted, the Legislature included Penal Code section 288, subdivision (a) as a qualifying offense for finding a person an SVP if it were committed with force or violence. (§ 6600, subd. (b).) In 1996, the Legislature amended the Act to include any qualifying offense listed in the existing definition of an SVP regardless of whether it was violent when it involved a child under 14 years of age and "substantial sexual conduct." (§ 6600.1, subd. (a) as amended by Stats. 1996, ch. 461, § 3; see *People* v. *Superior Court (Johannes), supra*, 70 Cal.App.4th at pp. 567-568.) The analysis of the Senate Committee on Criminal Procedure regarding Senate Bill No. 2161, 1995-1996 Regular Session, which added section 6600.1, stated the key issue was "SHOULD THE DEFINITION OF 'SEXUALLY VIOLENT PREDATOR' BE EXPANDED TO INCLUDE SPECIFIED NONVIOLENT SEXUAL OFFENSES ON A VICTIM UNDER THE AGE OF 14?" (Sen. Com. on Crim. Proc., Analysis of Sen. Bill No. 2161 (1995-1996 Reg. Sess.), p. 2.) We presume the Legislature in affirmatively answering this question and amending section 6600.1 to include the specific nonviolent act of masturbation in subdivision (b) as substantial sexual conduct was aware of the general use of that term to describe any act of genital touching.

Because the Legislature was also aware of the "the long-standing rule that [Penal Code] section 288 is violated by 'any touching' of an underage child accomplished with the intent of arousing the sexual desires of either the perpetrator or the child" (*People* v. *Martinez, supra,* 11 Cal.4th at p. 452; *People* v. *Hernandez, supra,* 46 Cal.3d at p. 201), its inclusion of such offenses as predicate crimes under the Act while at the same time requiring they satisfy the definition of substantial sexual conduct evidences its intent to define conduct that goes beyond the mere touching of any part of the body of an underage child required for a conviction under Penal Code section 288, subdivision (a). We thus believe the sexual conduct described by the term "masturbation" in subdivision (b) of section 6600.1 refers to the specific type of touching required, that of the genitals of either the victim or the offender. Although this requirement is qualitatively more than that required under Penal Code section 288, subdivision (a), we do not read the definitional language of section 6600.1, subdivision (b), as Chambless does, to quantify in any manner the amount of the genital touching required to qualify sexual conduct as masturbation and thus substantial under the Act.

We find support for our conclusion in the case of *People* v. *Grim, supra,* 9 Cal.App.4th 1240. In *Grim,* the court considered the appropriateness of jury instructions concerning the sufficiency of the evidence to find substantial sexual conduct based on oral copulation as defined in Penal Code section 1203.066, subdivisions (a)(9) and (b).[17] (*People* v. *Grim, supra,* at pp. 1241-1243.) It found that the instruction telling the jury that "[a]ny contact, however slight, between the mouth of one person and the sexual organ of another person constitutes 'oral copulation'" and that penetration of the mouth was not required was proper for finding "oral copulation" sufficient to constitute substantial sexual conduct under such section. (*Ibid.*) Because the Legislature took the definition of substantial sexual conduct for the Act (§ 6600.1, subd. (b)) directly from Penal Code section 1203.066, subdivision (b) (see Sen. Com. on Crim. Proc., Analysis of Sen. Bill No. 2161, (1995-1996 Reg. Sess.), p. 3), we presume it intended to use the terms in a like manner. (See *People* v. *Weidert* (1985) 39 Cal.3d 836, 845-846 [218 Cal.Rptr. 57, 705 P.2d 380].) Thus, the type or extent of oral copulation sufficient to show substantial sexual conduct under section 6600.1, subdivision (b) would necessarily be the same as that construed by the court in *Grim.*

Similarly, because section 6600.1, subdivision (b) provides that masturbation as well as oral copulation can mean substantial sexual conduct, by parity

---

[17]At the time *Grim* was decided, Penal Code former section 1203.066, subdivision (a)(9) barred probation for "[a] person who occupies a position of special trust and commits an act of substantial sexual conduct." Subdivision (b) of that section provided " '[s]ubstantial sexual conduct' mean[t] penetration of the vagina or rectum by the penis of the offender or by any foreign object, oral copulation, or masturbation of either the victim or the offender."

of reasoning we believe the Legislature intended the extent of touching of the genitals required to meet the definition of masturbation would also be the same as in *Grim.* Hence, any contact, however slight of the sexual organ of the victim or the offender would be sufficient to qualify as masturbation and in turn as substantial sexual conduct under the Act.

This construction of the pertinent language of section 6600.1, subdivision (b) is consistent with the rules of statutory construction (see *People* v. *Pieters, supra,* 52 Cal.3d at pp. 898-899) and comports with the Legislature's express intent to provide additional protection under the Act for underage children from those "predispose[d] . . . to the commission of criminal sexual acts." (§ 6600, subd. (c); see *People* v. *Superior Court (Johannes), supra,* 70 Cal.App.4th at pp. 567-568.)

When we review the sufficiency of the evidence in light of the above, applying the same standard used for reviewing the sufficiency of the evidence to support a criminal conviction (*People* v. *Mercer* (1999) 70 Cal.App.4th 463, 466 [82 Cal.Rptr.2d 723]), we conclude there is more than sufficient evidence to support the finding Chambless's conduct with Renee involved substantial sexual conduct to satisfy the requirement he previously committed a sexually violent offense against her. In 1989, Chambless pled guilty of two counts involving Renee; one related to touching her vagina on the outside, underneath her panties, and the other to forcing her to touch his penis. Regardless of the extent of the touching, each act as admitted by Chambless clearly falls under the definition of masturbation we have found contained in section 6600.1, subdivision (b). Contrary to his arguments regarding the conflicts in the evidence as to whether he actually forced Renee to touch his penis, such was a question the jury resolved against him. On appeal, we do not reweigh the evidence on such issue, but merely decide whether the record contains sufficient evidence to support the determination below. (*People* v. *Mercer, supra,* 70 Cal.App.4th at pp. 465-467.)

Having concluded there was sufficient evidence to support a finding Chambless committed a qualifying sexually violent offense against Renee under section 6600.1, we need not address his alternative contention there was insufficient evidence to support a finding his acts against Renee were accomplished by force, coercion or fear.

## II, III*

* * * * * * * * * * * * * * * * * * * * * * *

*See footnote, *ante,* page 773.

## DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 15, 1999.