Filed 6/24/14  P. v. Gonzalez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>SAMUEL GONZALEZ,<br><br>    Defendant and Appellant. | G048200<br><br>(Super. Ct. No. 11CF1732)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Steven D. Bromberg, Judge.  Affirmed.

Patricia M. Ihara, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

Samuel Gonzalez appeals from a judgment after a jury convicted him of multiple sexual offenses. Gonzalez argues insufficient evidence supports the jury's findings of substantial sexual conduct and the trial court erred in instructing the jury. None of his contentions have merit, and we affirm the judgment.

FACTS

Gonzalez and his wife have four daughters, D.G., E.G., Y.G., and S.G., and one son, J.G. Gonzalez, his wife, D.G., and E.G. emigrated from Mexico. J.G. and Y.G. remained in Mexico with their grandparents and moved to the United States later. S.G. was born in the United States.

Gonzalez began molesting seven or eight-year-old E.G. in 1991 at night when they slept in the same bed together. The first time Gonzalez touched her he put his hand underneath her clothes and touched her breasts and rubbed her vagina. Gonzalez touched her on two additional occasions. E.G. would try to wake up her sister who slept next to her to get Gonzalez to stop.

Eight-year-old Y.G. moved to the United States in about 1993 and lived with her parents. Gonzalez began molesting Y.G. upon her arrival. The first time, Y.G. was laying on her parents' bed watching television with Gonzalez. He first touched her leg and then her vagina. She tried to move his hand away, but he forced her down, pulled up her shirt, and kissed her breasts and chest. Gonzalez removed his pants, pulled Y.G.'s underwear down, put his penis in her vagina, and had sexual intercourse with her. Y.G. was bleeding and in pain. Gonzalez ejaculated onto the bed. Gonzalez continued raping Y.G. for the first few years about once a month and after that almost daily. Gonzalez began ejaculating inside Y.G. and forced her to orally copulate him.

Y.G. became pregnant when she was 13 years old. At some point, Gonzalez took Y.G. to a clinic where she learned she was pregnant. Gonzalez wanted her to have an abortion, but by the time he obtained the money, she was too far along in her pregnancy. They left the clinic, and Gonzalez took Y.G. to a bike trail, where he choked

2

her.  She did not resist because she wanted to die.  Gonzalez stopped choking her, and he drove them home, where he called a family meeting and told his wife and children that he had had been having sex with Y.G. and got her pregnant.  Three weeks after 14-year-old Y.G. had her baby via cesarean section, Gonzalez raped Y.G. again and she was in enormous pain.

Y.G.'s parents told her to tell anyone who asked that a man in Mexico got her pregnant.  At some point in 1999, Y.G. told a teacher what her father had done to her.  Social services first interviewed Gonzalez and his wife, and then Y.G.  Y.G. denied everything because she knew social services had already spoken to her parents.

Gonzalez molested 19-year-old S.G. in 2011.  S.G. was sleeping when she awoke to Gonzalez touching her breasts under her clothes.  S.G. left the house, drove around all night, and returned the next day.  She reported the incident to the police two weeks later.

Y.G. reported what Gonzalez had done to her shortly thereafter.  She provided DNA samples from her and her daughter.  A paternity test confirmed Gonzalez is the father of Y.G.'s daughter.

Santa Ana detectives interviewed Gonzalez after advising him of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436.  Gonzalez admitted he is the father of his granddaughter.  He stated that when Y.G. was about nine years old, they would fall asleep together, and she would "grab [his] parts."  He claimed Y.G. stimulated herself with his hand, and she wanted him to penetrate her but he refused because his wife would find out.  He also said that when Y.G. was about 11 years old, she would take off her clothes and rub her vagina on Gonzalez's penis and he would masturbate.  Gonzalez admitted they had sexual intercourse daily when Y.G. was about 13 or 14 years old for about six months.  He admitted they engaged in oral copulation.  He stopped having sexual intercourse with Y.G. when she became pregnant.  He admitted taking her to a

3

clinic to obtain an abortion but denied he tried to kill her. Gonzalez admitted abusing E.G. stating he was "diabolical." The following colloquy occurred between Detective Nunez[1] and Gonzalez:

"[Detective Nunez]: To touch the breast was it skin to skin, or over the clothes, or the clothes . . .

"[Gonzalez]: Over the clothing in, in I, I wanted to put in my hand but she always was honest and, and she never wanted me to touch her firmly.

"[Detective Gonzalez]: She said that, that there were *occasions* that you did touch her vagina.

"[Gonzalez]: Yes.

"[Detective Gonzalez]: Okay.

"[Gonzalez]: But always uh, uh, she took my hand out and I never put it . . .

"[Detective Nunez]: But you would put your hand in and would touch her vagina but she would take your hand out for you?

"[Gonzalez]: Exactly.

"[Detective Nunez]: Okay.

"[Detective Gonzalez]: Okay.

"[Detective Nunez]: Did she, did she touch, touch you?

"[Gonzalez]: No.

"[Detective Nunez]: No.

"[Detective Gonzalez]: Okay, how many times did that occur with.

"[Gonzalez]: With [E.G.], not many because I uh.

"[Detective Gonzalez]: More than five?

---

[1] We have searched the record but are unable to located Detective Nunez's first name.

"[Gonzalez]:  No, like about two or three times."  (Italics added.)

Gonzalez told detectives he may have touched S.G.'s breast but if he did he did not have bad intentions.

An information charged Gonzalez with the following:  Y.G.—forcible rape (Pen. Code, § 261, subd. (a)(2))[2] (count 1), and nine counts of committing a lewd act upon a child (§ 288, subd. (a)) (counts 2-10); E.G.—two counts of committing a lewd act upon a child (§ 288, subd. (a)) (counts 11 & 12); and S.G.—misdemeanor sexual battery (§ 243.4, subd. (e)(1)) (count 13).  As to counts 2 through 10, the information alleged Gonzalez committed the offenses against more than one victim (§ 667.61, subds. (b), (e)(5)).  With respect to all but counts 1 and 13, it alleged he had substantial sexual conduct with a child (§ 1203.066, subd. (a)(8)), including counts 11 and 12 which alleged masturbation.  Finally, as to count 10, the information alleged he committed the offense against more than one victim and personally inflicted great bodily injury.  (§ 667.61, subds. (a) & (e).)

As to counts 1, 2, and 3, the information alleged the statute of limitations was tolled (§ 803, subds. (f)(1)) because Y.G. was under 18 years of age and the offenses involved substantial sexual conduct (§ 1203.066, subd. (b)), and alleged corroborating evidence.  With respect to counts 4, 5, 6, 7, 8, 9, and 10, the information alleged the statute of limitations was tolled because Y.G. was under 18 years of age (§ 801.1, subds. (a)), and prosecution commenced before she was 28 years of age.  Finally, as to counts 11 and 12, the information alleged the statute of limitations was tolled (§ 803, subds. (f)(1)), because E.G. was under 18 years of age and the offenses involved substantial sexual conduct (§ 1203.066, subd. (b)).  The prosecution alleged

---

[2]        All further statutory references are to the Penal Code, unless otherwise indicated.

5

corroborating evidence, including Y.G. stated Gonzalez molested her as a child and Gonzalez admitted touching E.G.'s vagina when she was under 14 years of age.

At trial, E.G. testified concerning Gonzalez molesting her. When the prosecutor asked how many times Gonzalez touched her breasts and vagina, she answered, "at least three times." The prosecutor asked if he touched her breasts and vagina on each of the three occasions, E.G. replied he touched her vagina on two of the occasions. When the prosecutor asked how many times he touched her vagina "for sure," she responded, "at least once." On cross-examination, E.G. agreed when defense counsel asked whether Gonzalez touched her vagina "at least once." E.G. testified a detective told her and Y.G. they could apply for U-Visas, which she understood was a document that helps crime victims remain in the United States.

Detective Alan Gonzalez testified he interviewed E.G. on June 29, 2011. The following colloquy occurred:

"[Prosecutor]: And there were incidents she described where -- well, let me withdraw that. She described approximately three incidents; correct?

"[Detective Gonzalez]: That is correct.

"[Prosecutor]: Did she say what happened during each of those incidents?

"[Detective Gonzalez]: Yes.

"[Prosecutor]: In terms of what she said happened during those incidents, was each incident essentially the same in terms of the touching involved?

"[Detective Gonzalez]: Yes.

"[Prosecutor]: What did she say that the touching involved on each of those three incidents?

"[Detective Gonzalez]: She described [Gonzalez] placing his hands under her clothing and touching her vagina and also touching her breasts.

"[Prosecutor]: And when she described him touching her vagina, did she say whether it was over or under the clothing?

6

"[Detective Gonzalez]: She said it was under the clothing.

"[Prosecutor]: And she described that for each of the incidents?

"[Detective Gonzalez]: Yes."

On cross-examination, Detective Gonzalez stated E.G. said she did not remember the complete details of what Gonzalez did to her. On redirect examination, the prosecutor asked, "But during the interview [E.G.] made it clear there were at least three occasions -- separate occasions where [Gonzalez] touched both her breasts and her vagina?" Detective Gonzalez answered, "That is correct."

Gonzalez testified on his own behalf. Gonzalez testified his statements to detectives were false and he and his wife concocted the story in an attempt to get U-Visas for his family to remain in the United States. On cross-examination, Gonzalez explained nine-year-old Y.G. was sexually promiscuous and the part about her sexually abusing him "was the truth." He said S.G. was not part of the plan because she was a United States citizen.

As relevant to the issues on appeal, the trial court instructed the jury on the statute of limitations, the enhancements, and unanimity. Defense counsel objected to the definition of masturbation contained in two of the instructions.

The trial court instructed the jury with CALCRIM No. 3410A that if it found Gonzalez guilty of counts 1, 2, 3, 11, and 12, it had to determine whether the prosecution provided by *clear and convincing evidence* among other things the offenses involved "[s]ubstantial sexual conduct." The instruction explained the difference between the burdens of proof. And the instruction defined "masturbation" as follows: "[A]ny touching of the genitals, however slight. Masturbation can occur when a person's genitals are touched from outside the person's clothes. Contact with bare skin is not required."

The trial court instructed the jury on the substantial sexual conduct enhancement. As relevant here, CALCRIM No. 3181B provided, "If you find the

7

defendant guilty of any of the crimes charged in [c]ounts 11 and 12, [l]ewd [a]ct on a [c]hild [u]nder 14, you must then decide, for each of those crimes, whether the People have proved the additional allegation that those crimes involved substantial sexual conduct, namely, masturbation. [¶] . . . [¶] Masturbation means any touching of the genitals, however slight. Masturbation can occur when a person's genitals are touched from outside the person's clothes. Contact with bare skin is not required."

Finally, the trial court instructed the jury with CALCRIM No. 3501, the unanimity instruction, as to counts 2 through 9 involving Y.G. but not counts 11 and 12 concerning E.G.

The jury convicted Gonzalez of all counts and found true all the enhancements. The trial court sentenced Gonzalez to a total indeterminate term of 145 years to life (counts 2 through 9-15 years to life on each and count 10-25 years to life), plus a determinate term of 12 years (count 1-eight years, count 11-two years, count 12-two years).

## DISCUSSION

Gonzales argues insufficient evidence supports the jury's finding of substantial sexual conduct, the trial court erred in instructing the jury on "masturbation," and the court erred in failing to instruct the jury sua sponte on unanimity. All Gonzalez's claims concern E.G. and counts 11 and 12. We will address each of his claims in turn.

*I. Sufficiency of the Evidence*

Gonzalez contends insufficient evidence supports the jury's finding he had substantial sexual conduct with E.G. He relies on the fact that to toll the statute of limitations on counts 11 and 12, the prosecution had to establish by clear and convincing

8

evidence[3] those counts involved substantial sexual conduct, i.e., masturbation. Gonzalez cites to E.G.'s testimony he touched her "at least once" to support his claim he only masturbated her once. As we explain below, there was other evidence the jury could reasonably rely on to conclude Gonzalez masturbated E.G. twice.

"'""In reviewing the sufficiency of evidence under the due process clause of the Fourteenth Amendment to the United States Constitution, the question we ask is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" [Citation.] We apply an identical standard under the California Constitution. [Citation.] "In determining whether a reasonable trier of fact could have found defendant guilty beyond a reasonable doubt, the appellate court 'must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'" [Citation.] The same standard also applies in cases in which the prosecution relies primarily on circumstantial evidence. [Citation.]' [Citation.] [¶] We therefore review the record in the light most favorable to the prosecution to determine whether the challenged convictions are supported by substantial evidence, meaning 'evidence which is reasonable, credible, and of solid value.' [Citation.] In contrast, 'mere speculation cannot support a conviction. [Citations.]' [Citation.] 'In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.]'" (*People v. Mejia* (2007) 155 Cal.App.4th 86, 93.)

---

[3]     Although the applicable burden of proof for the statute of limitations is preponderance of the evidence (*People v. Medina* (1990) 51 Cal.3d 870, 919), at the prosecutor's request, the trial court instructed the jury with the clear and convincing evidence standard to avoid confusing the jury because the applicable burden of proof to establish the corroborating facts is clear and convincing evidence.

9

Section 288, subdivision (a), prohibits any person from "willfully and lewdly commit[ting] any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child . . . ." Section 1203.066, subdivision (a)(8), provides a defendant is ineligible for probation if a person who violates section 288 "has substantial sexual conduct with a victim who is under 14 years of age." Section 1203.066, subdivision (b), states, "'Substantial sexual conduct' means penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or *masturbation* of either the victim or the offender." (Italics added.)

Here, the record includes evidence from which the jury could reasonably conclude Gonzalez masturbated E.G. twice. E.G. initially said Gonzalez touched her breasts and vagina "at least three times," but when examined further concerning whether he touched her vagina three times she said, "[o]nce he didn't" because she tried to move and later "at least once." But there was other testimony, including Detective Gonzalez's testimony and Gonzalez's statements to detectives to establish by clear and convincing evidence Gonzalez masturbated E.G. twice. Detective Gonzalez testified E.G. told him that Gonzalez touched her on three occasions and all three encounters involved the same type of conduct—Gonzalez putting his hand under E.G.'s clothes and touching her breasts and vagina. Gonzalez's claim E.G.'s memory was unreliable in June 2011, 20 years after the event, but reliable at trial because she was under oath and "think[ing] carefully" is unpersuasive.

Additionally, when read in context, the jury could reasonably rely on Gonzalez's statements to detectives to establish he masturbated E.G. twice. After Detective Nunez questioned Gonzalez about touching E.G.'s breasts, the questions turned to whether he touched her vagina. Gonzalez admitted there were "occasions" he touched E.G.'s vagina. Detective Nunez transitioned and asked whether E.G. touched Gonzalez,

10

but Detective Gonzalez quickly returned to Gonzalez touching E.G. It is true he did not specifically ask how many times Gonzalez touched E.G.'s vagina, but in context the jury could reasonably conclude Gonzalez admitted touching E.G.'s vagina at least twice when Gonzalez responded, "about two or three times" based on the context of their conversation.

Gonzalez relies on *People v. Moore* (1989) 211 Cal.App.3d 1400, to support his claim E.G.'s testimony was an "approximation" constituting speculation. In *Moore*, the prosecutor asked the victim "'[*a*]*bout* how many times'" defendant sodomized her. (*Id*. at p. 1409.) The victim replied three times. Defendant focused on the form of the prosecutor's question and argued the victim's testimony was speculative. The *Moore* court rejected that argument, explaining "the form of the prosecutor's question is regrettable" but the victim did not answer with an approximation and there was sufficient evidence defendant committed three separate acts. (*Ibid*.)

As we explain above, E.G.'s testimony was not the sole evidence on this point. Detective Gonzalez and Gonzalez himself provided additional evidence from which the jury could reasonably conclude based on clear and convincing evidence Gonzalez masturbated E.G. twice. To be sure, based on the entire record, we conclude sufficient evidence supports the conclusion Gonzalez masturbated E.G. twice under the higher beyond a reasonable doubt standard.

## II. Jury Instructions

### A. Masturbation

Gonzalez contends the definition of masturbation was overbroad and incorrect and we must reverse his convictions on counts 11 and 12, because the statute of limitations was not tolled, and the jury's findings on the multiple victim allegations as to counts 2 through 10 because he did not engage in substantial sexual conduct. Not so.

In *People v. Chambless* (1999) 74 Cal.App.4th 773, 776 (*Chambless*), Division One of this district addressed the substantial sexual conduct requirement under

11

the Sexually Violent Predators Act (SVPA) in effect at that time. The court explained the Legislature took the definition of substantial sexual conduct under the SVPA (see former Welf. & Inst. Code, § 6600.1, subd. (b)), directly from section 1203.066, subdivision (b), and held the definition of masturbation under the SVPA "encompasses any touching or contact, however slight, of the genitals of either the victim or the offender, with the requisite intent." (*Chambless, supra,* 74 Cal.App.4th at pp. 783, 786.) The *Chambless* court stated masturbation is not an offense codified in the Penal Code, but that the word appeared to have been used in the SVPA "simply in its commonly understood meaning to describe the touching of one's own or another's private parts without quantitative requirement for purposes of defining conduct that was lewd or sexually motivated." (*Id*. at p. 784, fn. omitted.) The *Chambless* court relied, in part, on *People v. Grim* (1992) 9 Cal.App.4th 1240 (*Grim*), in which the court considered the appropriateness of jury instructions concerning the sufficiency of the evidence to find substantial sexual conduct based on oral copulation as defined in section 1203.066. (*Grim, supra,* 9 Cal.App.4th at pp. 1241-1243.) The *Grim* court held the instructions telling the jury that "'[a]ny contact, however slight, between the mouth of one person and the sexual organ of another person constitutes "oral copulation"'" and that penetration of the mouth was not required for finding oral copulation sufficient to constitute substantial sexual conduct under section 1203.066. (*Grim, supra,* 9 Cal.App.4th at p. 1242.) The *Chambless* court reasoned that because section 1203.066 provided masturbation as well as oral copulation can mean substantial sexual conduct, just as the SVPA then "the Legislature intended the extent of touching of the genitals required to meet the definition of masturbation would also be the same as in *Grim*. Hence, any contact, however slight[,] of the sexual organ of the victim or the offender would be sufficient to qualify as masturbation and in turn as substantial sexual conduct . . . ." (*Chambless, supra,* 74 Cal.App.4th at p. 787.) The court concluded its construction was consistent with principles of statutory construction and the SVPA's purpose of protecting underage children. (*Ibid*.)

12

Gonzalez asserts the *Chambless* court's definition of masturbation is overbroad and incorrect and raises the following contentions to support his claim we should not follow *Chambless*: *Chambless* articulated a legal definition of masturbation different from its common everyday meaning; *Chambless's* definition of masturbation is broader than its common everyday meaning because the standard is "substantial sexual conduct" not "slight" touching; *Chambless* improperly compared masturbation to oral copulation in arriving at its definition; protecting children is not a sufficient justification for utilizing an overbroad definition; *Chambless* should not be followed because the Legislature subsequently amended Welfare and Institutions Code section 6600.1; and *Chambless* concerned "a sufficiency of the evidence question, not a jury instruction definition of the term."

First, we note subsequent cases have affirmed the *Chambless* court's definition of "masturbation" in a variety of contexts. (*People v. Dunn* (2012) 205 Cal.App.4th 1086, 1098, fn. 8 [quoting *Chambless* definition in denying probation pursuant to § 1203.066, subds. (a)(8) & (b)]; *People v. Carlin* (2007) 150 Cal.App.4th 322, 333 [relying on *Chambless* definition of masturbation in finding prosecution's evidence of substantial sexual conduct sufficient under SVPA]; *People v. Fulcher* (2006) 136 Cal.App.4th 41, 52 [quoting *Chambless* definition with approval in SVPA case]; *People v. Whitney* (2005) 129 Cal.App.4th 1287, 1294 [same]; *People v. Terry* (2005) 127 Cal.App.4th 750, 772 [adopting *Chambless* definition of masturbation pursuant to § 803, subd. (g)]; *People v. Lopez* (2004) 123 Cal.App.4th 1306, 1311-1315 (*Lopez*) [relying on *Chambless* to hold masturbation does not require direct touching of genitals but may be done over clothing under SVPA; J. Walsh concurring *Chambless* "presents a difficult definitional problem"]; *People v. Whitlock* (2003) 113 Cal.App.4th 456, 463 [same].)

We find no compelling reason to depart from *Chambless's* well-reasoned analysis and Gonzalez cites to no alternative definition that has precedential value other

13

than masturbation's common everyday meaning. But that definition would be of no assistance to the jury because it contains no quantitative component to the duration of the stimulation to the genital area. (*Lopez, supra,* 123 Cal.App.4th at pp. 1313-1314 [dictionary words "'manipulation'" and "'excitation'" insufficient for quantitative element to amount of touching necessary for masturbation]; see, e.g., Webster's 3d New Internat. Dict. (1981) p. 1391 [defining masturbation as "erotic stimulation involving the genital organs commonly resulting in orgasm and achieved by manual or other bodily contact exclusive of sexual intercourse, by instrumental manipulation, occas. by sexual fantasies, or by various combinations of these agencies"].) And like *Lopez*, because the trial court instructed the jury "the touching had to be done with the 'requisite specific intent to arouse, appeal to, or gratify the sexual desires of either party,' the component of manipulation or excitation was acknowledged." (*Lopez, supra,* 123 Cal.App.4th at p. 1313.)

Because we conclude the *Chambless* court's thorough reasoning carries the day, we need not address each of Gonzalez's criticisms save one. Gonzalez argues *Chambless* should not be followed because in *2010* the Legislature subsequently amended Welfare and Institutions Code section 6600.1, the statute the *Chambless* court construed, to exclude misdemeanor offenses. We disagree.

The courts presume the Legislature is "'aware of "'judicial decisions already in existence, and to have enacted or amended a statute in light thereof. [Citation.]'" [Citation.]' [Citation.] Moreover, where the Legislature uses a term well understood by the common law, we must presume that the Legislature intended the common law meaning. [Citation.]" (*People v. Newby* (2008) 167 Cal.App.4th 1341, 1346-1347.) Gonzalez relies on this presumption in making his claim.

It is true Welfare and Institutions Code section 6600.1 was amended but not by the Legislature in 2010. Section 6600.1 was amended by proposition in 2006.

14

(Prop. 83, § 25, approved by voters, Gen. Elec. (Nov. 7, 2006) eff. Nov. 8, 2006.) But it is also true the Legislature has amended, repealed, and reenacted section 803, one of the statutes at issue here, multiple times since 1999. (See Stats. 2001, ch. 235, § 1; Stats. 2003, ch. 949, § 1; Stats. 2005, ch. 2, § 3; Stats. 2005, ch. 479, § 3; Stats. 2007, ch. 579, § 41; Stats. 2011, ch. 15, § 447; Stats. 2011, ch. 211, § 1.5.) Although the Legislature has amended section 803 multiple times since 1999, the Legislature has not amended the statute to indicate a disagreement with the *Chambless* court's definition of masturbation. Therefore, we must presume that when the Legislature amended section 803, it was aware of the definition of masturbation set forth in *Chambless*. Thus, the fact the Legislature did not modify the language in the statute to indicate a disagreement with *Chambless* indicates an acceptance of the *Chambless* court's definition of masturbation.

*B. Unanimity*

Gonzalez argues "the trial court erred when it failed to give a unanimity instruction on counts 11 and 12 and on the factual finding of masturbation in the statute of limitations allegations." (Capitalization omitted.) The Attorney General responds the court did not err because the conduct underlying counts 11 and 12 were substantially similar and Gonzalez presented a single defense to all the charges.

Gonzalez argues the Attorney General "implicitly concedes" the trial court erred in failing to instruct the jury on unanimity as to counts 11 and 12 but asserts the error was harmless. To interject quickly, we disagree with that. Gonzalez continues though, "[Gonzalez] does not dispute that as to the underlying charges of lewd acts in counts 11 and 12, any error in failing to give the instruction was harmless where E.G. testified that [Gonzalez] touched her breasts three times." Gonzalez adds though the Attorney General failed to address his claim "a unanimity instruction was required for *the factual finding of masturbation*, to prove 'substantial sexual conduct' occurred, a necessary component of the statute of limitations allegations."

15

In a criminal case, the constitutional right to jury unanimity requires that when a defendant is charged with a single criminal act and the evidence shows more than one such act, either the prosecution must select the specific act relied upon to prove the charge, or the jury must be instructed that it must agree unanimously that defendant committed the same act. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*).) A unanimity instruction is not required where the acts are substantially identical in nature and the jury, believing one act occurred, must inexorably believe all acts occured. (*People v. Champion* (1995) 9 Cal.4th 879, 932, disapproved on another ground in *People v. Ray* (1996) 13 Cal.4th 313.) This rule applies to the facts of this case.

Gonzalez's defense was he concocted the story he sexually abused his daughters to enable them to obtain U-Visas to remain in the United States. He testified his statements to detectives were false, except for the fact his daughter, Y.G., could not keep her hands off *him*. Contrary to Gonzalez's claim otherwise, the evidence demonstrated Gonzalez's conduct was substantially identical in nature—Gonzalez reached under E.G.'s clothes and touched her breasts and vagina at least two times. We are not convinced the jury could have based its verdicts on different conduct based on Gonzalez's and E.G.'s accounts of what happened. The jury was either going to believe Gonzalez's defense or it was not, which it didn't and isn't surprising considering a paternity test established he was his granddaughter's father. (*People v. Fernandez* (2013) 216 Cal.4th 540, 557-558 [jurors either believed defendant repeatedly molested his granddaughters or they completely disbelieved granddaughters' stories].) Thus, the court did not err in failing to instruct the jury sua sponte on unanimity as to counts 11 and 12.

As to Gonzalez's second claim, he cites to *People v. Gibson* (1991) 229 Cal.App.3d 284, 287, to argue the unanimity doctrine applies to sentencing enhancements as well as underlying offenses. The statute of limitations is not an element of a crime to the extent the definition of criminal conduct is concerned (*People v. Frazer* (1999) 21 Cal.4th 737, 757-760, overruled on other grounds in *Stogner v. California*

16

(2003) 539 U.S. 607, 609-610), nor is it a sentencing enhancement. In dicta, the Supreme Court has indicated that in the conspiracy context, there may be a case where the trial court may have to instruct the jury an overt act was committed within the applicable statute of limitations period. (*Russo, supra,* 25 Cal.4th at p. 1136, fn. 2.)

Assuming a trial court may be required to instruct the jury on unanimity when there are multiple acts alleged to toll the applicable statute of limitations, Gonzalez does not argue the analysis would be any different than that discussed above. Indeed, he asserts the conduct was not "substantially identical" and "[t]he jury was not presented with an 'all-or-nothing choice.'" These are the same concepts a court must consider when determining whether to instruct a jury on unanimity when there are multiple acts underlying an *offense*. Gonzalez offers no compelling justification why the analysis would be any different. As there was no error, we need not address prejudice. Thus, the trial court did not err in failing to instruct the jury on unanimity as to Gonzalez's guilt on counts 11 and 12 or to toll the statute of limitations as to those counts.

## DISPOSITION

The judgment is affirmed.

O'LEARY, P. J.

WE CONCUR:

RYLAARSDAM, J.

MOORE, J.

17